### BROWN v. CHANDLER.

NOTES AND BILLS—PARTNERSHIP—CONSIDERATION.—The note sued on herein held to be founded on a good and valid consideration—balance due payee in the settlement of a copartnership account.

Before ALDRICH, J., Sumter, July, 1896.    Affirmed.

Action by Albertus S. Brown against James H. Chandler on two promissory notes.    The following Circuit decree fully states the facts:

This action comes before this Court upon the pleadings and testimony taken by the master, his conclusions thereon, and the exceptions of defendant. Plaintiff instituted this action to recover judgment against defendant on two promissory notes, set out in the complaint in two causes of action. The $48 note set out in the first cause of action is admitted, and needs no consideration. The $2,000 note, dated March 20th, 1894, and due January 1st, 1896, with interest after maturity at the rate of eight per cent. per annum until paid, is the subject matter of second cause of action and of this litigation. Defendant admits the execution of said $2,000 note, but alleges: 1st. That it is without consideration and void. 2d. That it was executed under the "mutual mistake" of the parties; and 3d. That it was executed under a mistake of law or mistake of law and fact. On or about August 25th, 1887, plaintiff and defendant entered into a copartnership for the purpose of selling clothes in the city of Sumter, S. C., which continued for some time. Plaintiff contends that it continued up to March 20th, 1894, but defendant insists that the partnership was dissolved and reorganized several times prior to its final dissolution. The dates of these dissolutions, if facts, are material, as are also the consequences resulting from them. Defendant in his answer says that at one time he was due plaintiff money "on account of the excess of the defendant's personal account over that of the plaintiff" in the partnership business. This indebtedness, says defendant, has been "satisfied and discharged" by the dealings between the parties. The dealings referred to are previous alleged settlements by dissolution of the partnerships. The master found in favor of plaintiff. Defendant's exceptions, quite numerous, depend upon the facts, and I will go to the facts.

Defendant having admitted the execution of the note and a previous indebtedness to plaintiff, should show how the note or the debt evidenced by it has been satisfied and discharged. Defendant's legal propositions as submitted are in the abstract correct, but has he made out a defense upon

the facts to which his law is applicable? The master finds as matter of fact, "That the copartnership existing between the plaintiff and the defendant was dissolved on the 20th day of March, 1894, and that at that time there was a considerable sum due to the plaintiff by the defendant on account of their partnership transactions, and it appears to me that the note for $2,000 was made as a compromise settlement of the same, and is based upon good and sufficient consideration." I find in the testimony as an exhibit, papers purporting to state the accounts of the two partners with the partnership of Brown & Chandler, commencing August 25th, 1887, and ending March 20th, 1894. At last mentioned date the accounts stood: J. H. Chandler's account, $21,543.13; A. S. Brown, 6,900.98; excess of J. H. Chandler, 14,642.15. This statement may not be absolutely correct, but it is approximately so, if not safely correct. I next find exhibit A, purporting to be a statement of Brown & Chandler, taken March 20th, 1894, the date of the dissolution as contended for by plaintiff and found by the master. The statement reads: Assets—Stock on hand, $11,086.73; accounts, 9,649.86; memorandums, 104.40; store and office fixtures, 759.35; bad accounts, 3,111.93—24,712.27. Liabilities—Bills payable, 7,044.96; Bank of Sumter, 7,000; credit accounts, 1,822.36—15,866.32; net capital, 8,845.95. The item "bad accounts," in the list of "assets," is, to say the least, "net capital," in its most dubious form. Plaintiff put in all of the original capital of the partnership business, viz: $4,000, and as the master has noted, it is not included in the list of partnership "liabilities." If we throw out the "bad accounts," and correct the "liabilities" statement by inserting $4,000 capital furnished by the plaintiff, the net capital will shrink from $8,845 down to 1,734.02. As a mercantile venture, running from August 25th, 1887, to March 20th, 1894, based upon a capital of $4,000, the success of this concern, especially from the point of view of the defendant, has been simply wonderful. Defendant retains his excess "account" of $21,543.13, escapes all responsibility

388            BROWN *v.* CHANDLER.

for the $15,866.32 of firm liabilities, and all for the $2,000
note, which he now says does not constitute either a "moral
or legal obligation upon him." Plaintiff, in consideration of
the $2,000 note, and the "assets" of the partnership, amount-
ing to the sum of $24,712.27, consisting mostly of $9,649.86
in the form of "accounts,"·and $3,111.93 more in the shape
of "bad accounts," without a word being said as to the $4,000
advanced as capital by him, has assumed $15,866.37 of the
firm's indebtedness. If these figures are even approximately
correct, and they seem to be, I am constrained to concur
with the master in his finding, that the $2,000 note is based
upon a good and sufficient consideration.

When and how many times did the parties hereto dissolve
the partnership or partnerships existing between them? The
master says once, and on March 20th, 1894. I can not say
that he is in error in so holding; on the contrary, I think
that he is sustained by the greater weight of the testimony.
The "agreement" of dissolution is evidenced by a formal
paper, a written instrument under the hands and seals of
the parties, and witnessed. It is dated March 20th, 1894,
and its first leading recital is: "Whereas we, the said Al-
bertus S. Brown and James H. Chandler, have for a number
of years past been engaged in carrying on a retail clothing
business in the city of Sumter, in said State, as copartners,
under the firm name of Brown & Chandler, and in conduct-
ing said business, debts to a large amount have been con-
tracted and are unpaid, and we desire to dissolve the said
copartnership, and have agreed to do so upon the terms as
hereinafter set forth." The terms have already been refer-
red to. The last stipulation is: "And the said James H.
Chandler further agrees to execute and deliver forthwith
his promissory note to said Albertus S. Brown for $2,000,
payable January 1st, 1896, and the signing of this agree-
ment and of said note shall conclude the settlement and
adjustment of said copartnership affairs as between the said
Albertus S. Brown and James H. Chandler. If defendant
and plaintiff made a "mutual mistake" as to the considera-

tion of the note, it is very strange that both of them engaged in an important settlement with more or less of feeling existing, should embody so many errors in such a paper as defendant's testimony implies. If it were not correct and true, why was the statement that they had been "for a number of years past carrying on the partnership business," inserted in the paper? Why wish to dissolve it? It is possible that the parties hereto may have dissolved and reorganized their partnership under various contracts repeatedly. If so, then each dissolution and each reorganization based upon contract would restrict the rights of the parties according to their terms. There is some evidence that a dissolution of the partnership was discussed on several occasions prior to the actual dissolution, and some preparatory steps towards that end taken, but no such contract was consummated or perfected and they fell through, and the partnership ran on up to March 20th, 1894. I concur with the master, and overrule all of defendant's exceptions.

From this decree the defendant appeals on the following exceptions:

I. Because his Honor erred in holding that "there is some evidence that a dissolution of the partnership was discussed on several occasions prior to the actual dissolution, and some preparatory steps towards that end taken, but no such contract was consummated or perfected, and they fell through, and the partnership ran on up to March 20th, 1894."

II. Because his Honor erred in holding that the $2,000 note was based upon a good and sufficient consideration.

III. Because his Honor erred in holding that there was but one partnership between the appellant and respondent, which began on 25th August, 1887, and ended on the 20th March, 1894.

IV. Because his Honor erred in not holding that the copartnership indebtedness of the appellant to respondent was cancelled by the contract of 17th March, 1894, if any existed at that time.

V. Because his Honor erred in not holding that all co-partnership indebtedness of the appellant to respondent was cancelled when appellant's notes and mortgage were destroyed and respondent re-entered the copartnership.

VI. Because his Honor erred in not holding that all co-partnership indebtedness of appellant to respondent was cancelled by the sale by respondent to appellant of his interest in the copartnership business on the 23d April, 1893, it appearing from the undisputed evidence that appellant had paid to respondent the sum of $1,000 in money, and executed and delivered to the attorney of the respondent, by respondent's direction, his notes and mortgage for $6,000, the agreed price of respondent's interest in the copartnership business of Brown & Chandler.

VII. Because it was error to give judgment against the appellant on the $2,000 note.

*Messrs. Frasers & Cooper*, for appellant.

*Messrs. Purdy & Reynolds*, contra.

Sept. 23, 1897. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is an action on two promissory notes, one for $48, dated April 1st, 1888, payable January 1st, 1889, and the other for $2,000, dated March 20th, 1894, and payable January 1st, 1896. Plaintiff's cause of action on the first note was admitted. The controversy here relates to the $2,000 note. The answer admits the execution of the note, but sets up as a defense that the note is without consideration and void, that it was executed under a mutual mistake that defendant was liable to plaintiff for the excess of defendant's personal account over that of plaintiff during the existence of a copartnership between them, and that this liability had been extinguished by the dealings between the parties prior to the execution of the note; wherefore, the defendant prayed that the note be declared void and delivered up for cancellation.

The master, to whom the cause was referred, by consent,

found, as matter of fact, "that the copartnership existing between the plaintiff and the defendant was dissolved on the 20th day of March, 1894, and that at that time there was a considerable sum due to the plaintiff by the defendant on account of their partnership transactions, and * * * that the note for $2,000 was made as a compromise settlement of the same, and is based upon a good and sufficient consideration." The Circuit Court concurs with the master in finding that the note is based upon a good and sufficient consideration, but does not rely wholly upon the difference in the accounts of the partners as the consideration, for after alluding to this difference, the Court found, as matter of fact, "that plaintiff, *in consideration of the $2,000 note*, and the assets of the partnership, amounting to the sum of $24,712.27, consisting mostly of $9,649.86 in the form of 'accounts,' and $3,111.93 more in the shape of 'bad accounts,' without a word being said as to the $4,000 advanced as capital by him, *has assumed $15,866.32 of the firm's indebtedness*" (italics ours). Reference may be had to the official report for the Circuit Court decree and appellant's exceptions thereto.

The exceptions will be treated as a whole. They raise directly or indirectly the question whether there is error in the conclusion of the Circuit Court that the note in question is based upon a good and sufficient consideration.

If we were to treat this case as one at law, the judgment would necessarily be for affirming the judgment of the Circuit Court, since we have no power to review the findings of fact by that Court in a case at law. Where, however, the answer interposes an equitable defense, this Court has jurisdiction to review the findings of fact involved in the determination of the equitable defense. *Witte* v. *Weinberg*, 37 S. C., 579. When this Court is called upon to review the findings of fact by the Circuit Court, it is incumbent on appellant to satisfy this Court that the preponderance of the evidence is against the conclusions of the Circuit Court.

In August, 1887, plaintiff and defendant formed a copart-

nership in the clothing business, in the city of Sumter. Plaintiff furnished the whole of the capital, $4,000, and the partners were to share the profits equally. On March 20th, 1894, there was a final dissolution of the partnership, evidenced by a written contract under seal of that date, signed by both parties. This contract recites that: "Whereas we, the said Albertus S. Brown and James H. Chandler, have for a number of years past been engaged in carrying on the retail clothing business in the city of Sumter, in said State, as copartners, under the firm name of Brown & Chandler, and in conducting said business debts to a large amount have been contracted and are unpaid, and we desire to dissolve the said copartnership, and have agreed so to do upon the terms hereinafter set forth. Now this agreement witnesseth: that we, the said Albertus S. Brown and James H. Chandler, have this day dissolved the said copartnership of Brown & Chandler." The foregoing recitals show that the parties, on the 20th day of March, 1894, did not think that there had been any real dissolution of the partnership previous to that date. The master and Circuit Judge concur in finding that the final dissolution took place on March 20th, 1894, and that there had been no previous dissolution, and we can not say that the preponderance of the evidence is against that conclusion. If this be so, then appellant's case becomes wholly groundless, for his view is that the supposed liability, for which the note was given under a mutual mistake, was extinguished by the dissolution of the partnership on April 5, 1893, and again on March 17, 1894; appellant's theory being that these alleged dissolutions operated as a discharge of the individual accounts of the partners, and that at the time of making said note, in consideration of the supposed excess of defendant's account over that of plaintiff, there was in fact no excess at all. We are quite satisfied that the agreement of March 17, 1894, was not a dissolution, but that it provided for a dissolution at a future time, and in the meantime was intended merely to limit the partners as to the amounts they could draw out of the busi-

ness for personal use, and took away from Chandler the right to sign notes and drafts for the firm. The design of this agreement was not to take away from Chandler his right to share in the profits of the business, and make him a mere salaried clerk, but was to prevent unreasonable diversion of the firm's money to personal use instead of applying the same to the firm's indebtedness. Brown's belief that Chandler was drawing out more than this agreement allowed, led to the dissolution on March 20th, 1894. Chandler testified that he made up his mind to get out of the business on the morning of the 20th March. If so, there was no dissolution on the 17th March. There was evidence that on the 5th day of April, 1893, Brown agreed to sell out his interest in the business to Chandler for $7,000—$1,000 payable in cash and the remainder in four equal annual instalments, secured by a mortgage on the stock, accounts, &c. Under this agreement Brown paid Chandler the $1,000, and took control of the business, conducting it under the name of Brown & Chandler. The notes and chattel mortgage to secure the $6,000 was signed, and the papers were placed in the hands of Mr. Purdy, who then represented both parties. Mr. Chandler testified: "These papers were in the possession of Mr. Purdy, and was not to be delivered to either Brown or myself without our joint consent." Brown testified: "When I agreed to sell Mr. Chandler the business, he and I went to the office of Mr. Purdy and signed all the papers. We put them into Mr. Purdy's hands, with the understanding that none of them were to be delivered without the consent of both Chandler and myself." Some time after this, upon Chandler's stating that he would not be able to pay the first note, it was agreed by the parties that the notes and mortgage should be destroyed and that Brown should come back into the business. The terms upon which Brown was to come back into the business were not stated. We infer that the parties intended that the original status as partners was restored—as if no attempt to dissolve had been made. The $1,000 paid to Brown by Chandler on the purchase, April 5,

1893, while it had been borrowed by Chandler for the purpose, was eventually repaid to the lender out of the assets of the business. There was no notice given of any dissolution. The business was conducted under the name of Brown & Chandler, and Brown was liable for all the debts contracted while Chandler was running the business, from April 5, 1893, to the time Brown returned to the business. The recitals in the agreement of March 20, 1894, may be reconciled with the view that the status as partners had been restored, as if there had been no attempt at dissolution, whereas the same could not be reconciled with the fact of a completed dissolution on April 5, 1893, and the formation of a new partnership afterwards, for the partnership dissolved on March 20, 1894, was, in the agreement of that day, said to be the partnership in which Brown and Chandler had for a number of years past been engaged. We agree, therefore, with the Circuit Court, that there was no real dissolution of the . partnership on April 5, 1893. But if there was, we think the parties agreed that the original status should be deemed restored when Brown and Chandler directed the destruction of the notes and mortgage left with Mr. Purdy subject to their joint control.

But let us, for the moment, concede that the sale by Chandler to Brown, April 5, 1893, was a dissolution of the partnership, and in law operated to cancel the private accounts of the partners, and let us further concede that Chandler's account while he conducted the business alone should not properly form any part of the consideration of the note, since as to that he was both creditor and debtor, then it becomes important to ascertain *when* the *new* partnership was formed after April 5, 1893. Appellant's attorneys in their argument say it took place either in the fall of 1893 or in the early spring of 1894, and that the time is immaterial. Chandler testifies that it took place March 1st, 1894, and Brown testifies it took place about the middle or latter part of October, 1893. The burden of proof is upon Chandler, who seeks to set aside a settlement of the partnership

affairs on the ground of mutual mistake, and the proof he offers should be clear and convincing. We have been shown no reason to believe that Chandler is more credible or accurate than Brown, and it appears in the evidence that Brown in the fall of 1893 took an active interest in the compromise of some of the debts of Brown & Chandler, joining Chandler in giving notes for the credit portion of the compromise, and securing the compromise by obtaining his father's indorsement on the notes. As to these compromised debts, Chandler testified: "Some of these debts were contracted while Brown was a member of the firm." From this we infer that some of these debts were contracted by Chandler when he had charge after April 5, 1893. It is, therefore, more than likely that Brown would then be solicitous about whether Chandler would be able to pay the notes and mortgage, and upon ascertaining that they would not be paid, agreed to their destruction and his restoration to his old place in the firm. We, therefore, accept Brown's statement that he went back into the business in October, 1893, especially since appellant in his argument does not urge to the contrary. Then what was the state of the personal accounts of the parties from October, 1893, to March 20, 1894? Did not the account of Chandler largely exceed that of Brown during that period? We find in the testimony, "Exhibit C," that Chandler's account for the year 1893 was $7,142.74, which included the $1,000 paid to Brown, April 5, 1893, which Chandler charged to himself, which, for the purpose of this argument, may be taken from Chandler's account and charged to Brown's. Brown's account for the year 1893 was $527,01; from January 1, 1894, to March 20, 1894, Chandler's account was $1,030.25, and Brown's account for the same period was $30.85. We have no means of ascertaining from the testimony how much of the account of 1893 was made after October, 1893, but appellant kept the books, or had charge of them previous to October, at least, and was in a position to know the facts, and it was incumbent on him to show the facts, to sustain his plea that there was in fact and in law no excess

in the account of Chandler over Brown's. It is sufficient for us to know that Chandler's account from October, 1893, to March 20, 1894, largely exceeded that of Brown's, and from Chandler's standpoint, that the excess in his account over Brown's formed the consideration of the note. His contention that the note is without consideration must fail. Chandler testified that "the consideration for said note was the difference between my (his) and the plaintiff's personal account, while witness (Chandler) was a member of the firm of Brown & Chandler, and while witness owned the business of Brown & Chandler." He also testified: "On the 20th March, 1894, my personal account was $21,000 about, and Mr. Brown's about $9,000, including the $1,000 paid him from the money got from Pearson. It did not appear on his account, it was charged on my account." He further testified in reference to the settlement: "We thereupon began figuring on the accounts, and I finally agreed upon $2,000, and consented to give my note for it, payable in January, 1896." Appellant's testimony is inconsistent with his contention. But the real consideration of the note in suit is expressed in the agreement of March 20th, 1894. This contract shows that in consideration of Brown's agreeing "to assume, pay, satisfy and discharge all debts and obligations of the said firm of Brown & Chandler, and to hold the said James H. Chandler harmless on account thereof, &c.," Chandler transferred to Brown all his interest in the assets of Brown & Chandler, and executed the note in controversy; and in this contract it was expressly agreed, under seal, that "the signing of this agreement and of said note shall conclude the settlement and adjustment of said copartnership affairs between the said Albertus S. Brown and James H. Chandler." The firm's liabilities were $15,866.32, and its assets, including stock, fixtures, and $12,761.79 of accounts, good and bad, amounted to $24,712.27. Brown had furnished the original capital, $4,000, and under the agreement to share equally in the profits of the partnership, Chandler had drawn out from August, 1887, to March 20,

1894, $20,543.13, against Brown's $7,900.98. The difference in the accounts of the partners, whatever it was, went into the settlement of the partnership affairs. This settlement was the voluntary act of Chandler, who was in position to know the facts, and in the absence of fraud or mistake sufficient to set it aside, he must abide by it.

The judgment of the Circuit Court is affirmed.