0988

Mel A. GARRETT; J. Thomas Dean; Lawrence D. Sherer, Jr. and Sara Sherer; N. Stone Miller; J. Tobey Clemons and Jeanne Clemons; MSS Partnership by its Partners, R. David Massey, B. Joel Stoudenmire and Martha K. Stoudenmire; and Thomas M. Wellons, all Individually and as Partners in Litchfield Village Partnership under Partnership Agreement dated February ——, 1985, Respondents v. Louis F. SNEDIGAR, First Carolina Construction Company, Inc., and William Dant Goepper, Appellants.

(359 S. E. (2d) 283)

Court of Appeals

*O. G. Calhoun,* of *Haynsworth, Perry, Bryant, Marion & Johnstone; William H. Thomas, III,* and *C. Timothy Sullivan,* Greenville, *for appellants.*

*R. Frank Plaxco,* of *Leatherwood, Walker, Todd and Mann,* Greenville, *for respondents.*

Heard May 25, 1987.

Decided July 6, 1987.

SANDERS, Chief Judge:

The respondents, Mel A. Garrett, J. Thomas Dean, Lawrence D. Sherer, Jr., Sara Sherer, N. Stone Miller, J. Tobey Clemons, Jeanne Clemons, MSS Partnership by its partners, R. David Massey, B. Joel Stoudenmire and Martha K. Stoudenmire, and Thomas M. Wellons, all individually and as partners in Litchfield Village Partnership, brought this action against the appellants, Louis F. Snedigar, First Carolina Construction Company, Inc. and William Dant Goepper for fraud, breach of contract and violations of the South Carolina Uniform Securities Act and, against Mr. Goepper alone, for negligence. The Circuit Court granted the motion of the plaintiffs for partial summary judgment, ruling that the partnership interests of the plaintiffs are securities. The Court also granted the motion of the plaintiffs to amend their cause of action for negligence and denied the motion of Mr. Goepper for summary judgment on this cause of action. The Court further ruled, based on the judgment in an earlier

foreclosure action, that Mr. Snedigar is collaterally estopped to assert that a financial institution committed to lend the partnership more than $1.2 million. We reverse in part, affirm in part, modify in part and remand for further proceedings consistent with this opinion.

I

This litigation arises out of the sale to the plaintiffs of interests in a partnership formed to develop a shopping complex at Litchfield Beach. The partnership, called Litchfield Village Partnership, is described as a general partnership in the partnership agreement. The threshold issue on appeal is whether the Circuit Court erred in ruling as a matter of law that the partnership interests constitute securities as defined by the Uniform Securities Act (Sections 35-1-10 to -1590, Code of Laws of South Carolina, 1976, as amended).

In order for summary judgment to be proper, it not only must be clear that no issue of fact is involved, but the conclusions and inferences to be drawn from the facts must be undisputed as well. *Shea by Reynolds v. State Department of Mental Retardation*, 279 S. C. 604, 310 S. E. (2d) 819 (Ct. App. 1983), *overruled on other grounds, McCall v. Batson*, 285 S. C. 243, 329 S. E. (2d) 741 (1985). Summary judgment is inappropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Id.*

The following facts are relevant to our determination.

The defendant, Louis F. Snedigar, is a businessman who headed this enterprise. The defendant, First Carolina Construction Company, is the designated contractor for the enterprise. Mr. Snedigar is the president of First Carolina.

The defendant, William Dant Goepper, is an investment advisor who is registered with the National Association of Securities Dealers. He is a principal in Goepper Financial Advisors, a firm registered with the Securities and Exchange Commission.

Mr. Snedigar became involved in putting together a venture to build a shopping complex at Litchfield Beach. He initially planned to organize the enterprise as a limited partnership with himself as the general partner.

Mr. Snedigar sought out Mr. Goepper to inquire about his availability to handle the syndication of the limited partnership. Mr. Goepper analyzed the venture and concluded that the limited partnership would not be attractive to investors. He so informed Mr. Snedigar.

Mr. Goepper later met with Mr. Snedigar and discussed the possibility that the venture might have some viability as a general partnership. Mr. Goepper stated that he understood that, under the general partnership structure, Mr. Snedigar "would be the managing general partner and do all the kinds of things normally associated with a limited partnership."

Mr. Snedigar enlisted the assistance of Mr. Goepper in marketing the general partnership. Mr. Goepper helped prepare a document describing the enterprise. Mr. Goepper also indicated to Mr. Snedigar that he knew several people who might be appropriate partners. Eventually, a number of the plaintiffs contacted Mr. Goepper about the partnership.

The partnership agreement provides that Mr. Snedigar, as managing partner, has "full charge of the management, conduct and operation of the Partnership business in all respects."

However, the agreement further provides that:

> No one member of the Partnership, including the Managing Partner, shall be authorized or empowered without the consent of the majority of the other Partners (but with such consent shall be authorized and empowered) on behalf of the Partnership to borrow (from any Partner or third party) or lend money, or make, deliver or accept any commercial paper, or execute any mortgage, deed, release or purchase or contract to purchase, or sell or contract to sell any property, or compromise or release any claims or debts, or obligate the Partnership in an amount in excess of or withdraw any money of the Partnership having a value or being in excess of $1,000.00.

The agreement also provides that Mr. Snedigar can be replaced as managing partner by a two-thirds vote of the other partners.

Additionally, under the agreement, any partner has "the right to a private audit of the books and records of the Partnership, providing such audit is made at the expense of the Partner desiring it and is made at a reasonable time after due notice."

The Uniform Securities Act defines the word security to include any "certificate of interest or participation in any profit-sharing agreement, [or] investment contract." Section 35-1-20(12), Code of Laws of South Carolina, 1976, as amended. The same definition is found in the federal Securities Act of 1933. *See* 15 U.S.C. § 77b(1)(1976). In construing the state act, we may look for guidance to cases construing its federal counterpart. *Bradley v. Hullander*, 272 S. C. 6, 249 S. E. (2d) 486 (1978).[1]

The United States Supreme Court, in the seminal case on this issue, defined an investment contract as a "transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Securities and Exchange Commission v. W. J. Howey Co.*, 328 U. S. 293, 298-99, 66 S. Ct. 1100, 1102-03, 90 L. Ed. 1244, *reh'g denied*, 329 U. S. 819, 67 S. Ct. 27, 91 L. Ed. 697 (1946).

Later cases have eliminated the requirement that one must expect profits solely from the efforts of others in order for an interest to be a security. *See United Housing Foundation, Inc. v. Forman*, 421 U. S. 837, 852, 95 S. Ct. 2051, 2060, 44 L. Ed. (2d) 621, *reh'g denied*, 423 U. S. 884, 96 S. Ct. 157, 46 L. Ed. (2d)115 (1975) ("The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others."); *O'Quinn v. Beach Associates*, 272 S. C. 95, 105, 249 S. E. (2d) 734, 739 (1978) ("[I]nvestment contracts may be found where the investor has duties that are nominal and insignificant or where the investor lacks any real control over the operation of the enterprise.").

---

[1] Statutes such as these are sometimes called "Blue Sky" laws—a name derived from the fact that they are enacted to protect investors against speculative schemes which have no more basis than "so many feet of blue sky." *State v. Cushing*, 137 Me. 112, 115, 15 A. (2d) 740, 742-43 (1940).

In general, limited partnership interests have been found to be investment contracts or securities, based upon the status of the "limited partner [as] a passive investor, having no vote or active voice in the conduct of the partnership's affairs." Sowards, *Federal Securities Act* Section 2.01 [11][ii] at 2-74 in 11-Part 1 Business Organizations—Securities Regulation (1986). General partnership interests, on the other hand, have often been found not to be securities, based upon the power of the partners to manage partnership affairs. *Odom v. Slavik,* 703 F. (2d) 212 (6th Cir. 1983). "[I]n searching for the meaning and scope of the word 'security' in the [federal] Act, form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight,* 389 U. S. 332, 336, 88 S. Ct. 548, 553, 19 L. Ed. (2d) 564 (1967).

In the leading recent case on this issue, the Fifth Circuit Court of Appeals identified three considerations in deciding whether an interest in a general partnership is a security:

> (1) [whether] an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) [whether] the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) [whether] the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

*Williamson v. Tucker,* 645 F. (2d) 404, 424 (5th Cir.), *cert. denied,* 454 U. S. 897, 102 S. Ct. 396, 70 L. Ed. (2d) 212 (1981).

It is clear in the instant case that Litchfield Village Partnership, though labeled a general partnership, has many characteristics of a limited partnership. The partners invested in a common enterprise for profit with the expectation that the profits would be derived from the efforts of Mr. Snedigar. However, it also appears from the partnership agreement that the other partners retained a measure of control over the partnership and the activities of Mr.

Snedigar. Whether, as a practical matter, the agreement leaves them so little power that the arrangement in fact distributes power as would a limited partnership is not a question which can be decided as a matter of law based on the existing record. At the very least, further inquiry into the facts is desirable.

Further, it appears from the record that at least two of the partners are lawyers and several others are businessmen. We recognize that these partners may not have specific expertise in the field of commercial development. However, it does not necessarily follow as a matter of law that they lack the business experience and knowledge necessary to exercise partnership powers intelligently or that they were dependent on Mr. Snedigar to the extent they could not replace him or otherwise exercise meaningful partnership powers. *See Deutsch Energy Co. v. Mazur,* 813 F. (2d) 1567, 1570 (9th Cir. 1987) ("[I]t appears to be an open question whether sophistication in one field of business will always transfer to another field. . . .").

For these reasons, we reverse the part of the order of the Circuit Court which ruled that the partnership interests of the plaintiffs are securities.

## II

In a separate cause of action, the plaintiffs allege that Mr. Goepper was negligent: (1) in holding himself out to be skilled in the evaluation of investments and in the furnishing of investment advice; and (2) in failing to investigate certain matters in connection with the venture. Mr. Goepper moved for summary judgment on this cause of action on the ground that he "owed plaintiffs no duty with regard to the alleged acts and omissions set forth in the Complaint." (His motion is not based on the sufficiency of the evidence.) The plaintiffs thereafter moved to amend this cause of action to include the following additional allegation:

> That Goepper held himself out to the plaintiffs as an investment advisor, competent to render reliable investment advice; further at the time of Goepper's solicitation of investments in Litchfield Village, many of the plaintiffs were clients of Goepper, to whom Goepper rendered investment advice; and said defendant intend-

ed and knew that the plaintiffs were relying upon him to use that degree of care and to have that degree of competence normally expected of investment advisors.

The Circuit Court denied the motion of Mr. Goepper for summary judgment and, in conjunction with its order denying his motion, granted the motion of the plaintiffs to amend.

Mr. Goepper first argues that the Court erred in ■ acting on the motion of the plaintiffs to amend without holding a hearing separate from his motion for summary judgment.[2]

It appears from the record that the various motions of the parties for summary judgment, including the motion of Mr. Goepper for summary judgment on the cause of action alleging that he was negligent, were argued over a two day period. On the second day of the hearing the plaintiffs filed their motion to amend the cause of action alleging negligence. Their motion to amend was assigned, with the consent of all parties, to the same judge who was hearing the arguments on the motions for summary judgment. The same considerations involved in deciding the motion for summary judgment on the cause of action alleging negligence were involved in deciding the motion to amend that cause of action, and it does not appear that any hearing, separate from the hearing on the motion for summary judgment, was ever requested on the motion to amend. In light of this procedural history, the Court did not err in not holding a separate hearing on the motion to amend.

Mr. Goepper further argues that the Court erred in ■ denying his motion for summary judgment because he owed no duty to the plaintiffs as a matter of law

---

[2] An interlocutory appeal of this issue, as well as the issues which we hereafter address, is not normally allowed. *See Davis-McGee Mule Co. v. Marett*, 129 S. C. 36, 37, 123 S. E. 323, 323 (1924) ("No appeal can be made except from a final judgment."). An order denying summary judgment cannot be appealed, even after trial. *Holloman v. McAllister*, 289 S. C. 183, 345 S. E. (2d) 728 (1986). However, these issues are properly before us because the issue of whether the Circuit Court erred in granting the motion of the plaintiffs for partial summary judgment is appealable. *See Briggs v. Richardson*, 273 S. C. 376, 379, 256 S. E. (2d) 544, 546 (1979) ("While not normally appealable, this issue is before the Court due to the appealability of the first issue.").

"to perform a 'due diligence' investigation or to inform the Plaintiffs of the absence of such an investigation."

"[O]ne who assumes to act, even though under no obligation to do so, may become subject to the duty to act with due care." *Crowley v. Spivey*, 285 S. C. 397, 406, 329 S. E. (2d) 774, 780 (Ct. App. 1985). If, as plaintiffs allege, Mr. Goepper undertook to evaluate the venture as an investment for them and furnish them investment advice, he became subject to the duty to do so with due care. *See Lawlor v. Scheper*, 232 S. C. 94, 99, 101 S. E. (2d) 269, 271 (1957) ("It may be true, as counsel argue, that appellants owed no duty to furnish any information as to the amounts owing on the two mortgages but when they undertook to do so, they owed a duty not to mislead respondent."); *Winburn v. Insurance Company of North America*, 287 S. C. 435, 441, 339 S. E. (2d) 142, 146 (Ct. App. 1985) ("A duty to exercise reasonable care in giving information exists when the defendant has a pecuniary interest in the transaction."); *Folkens v. Hunt*, 290 S. C. 194, 348 S. E. (2d) 839 (Ct. App. 1986) (once a public accountant undertakes to act on behalf of a client, he owes a duty to make a reasonable inquiry to ascertain facts).

Mr. Goepper finally argues that the complaint is not sufficient even as amended because Article 5 of the Uniform Securities Act does not confer a private cause of action for negligence against a registered investment adviser. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U. S. 11, 24, 100 S. Ct. 242, 249, 62 L. Ed. (2d) 146 (1979) ("[W]e hold that there exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment advisers contract, but that the Act confers no other private causes of action, legal or equitable.").

Like someone reaching for the moon in the water, Mr. Goepper thinks he sees something in the complaint which is not there.[3] It may be true that the complaint mirrors to

---

[3] This analogy is extrapolated from a Zen word puzzle called a "koan." *See* G. Plimpton, *The Curious Case of Sidd Finch* 41 (1987) ("A pair of monkeys are reaching for the moon in the water."). Zen is a Buddhist sect which teaches that enlightenment can be attained by means of paradoxical and nonlogical statements. *Webster's Seventh New Collegiate Dictionary* 1039 (1972).

some extent certain aspects of both the Uniform Securities Act and the Investment Advisers Act. However, the complaint nowhere mentions either Act and clearly alleges facts sufficient to state a cause of action for negligence based on the principles of common law previously discussed, independent of any statute.

Moreover, the Uniform Securities Act specifically provides that the rights and remedies which the Act establishes are in addition to any other rights or remedies that may exist at law or in equity. Section 35-1-1560. Legislative bodies are not the only sources from which proper standards of human behavior can be derived — a fact for which we all should be eternally grateful.

For the reasons, we affirm the part of the order of the Circuit Court which granted the motion of the plaintiffs to amend and denied the motion of Mr. Goepper for summary judgment.

### III

The next issue is whether the Circuit Court erred in applying the doctrine of collateral estoppel.

Litchfield Village Partnership borrowed $1.2 million from a financial institution and gave the institution a mortgage securing the debt. The institution later brought an action to foreclose the mortgage. The plaintiffs and Mr. Snedigar were joined as defendants in this action. The plaintiffs alleged, as a defense, that the institution had breached its commitment to lend an additional $200,000, and Mr. Snedigar testified to this effect. The Court, in its final judgment, determined that the institution had not made any such commitment.

One of the allegations of the plaintiffs in the instant case is that Messrs. Snedigar and Goepper misrepresented to the plaintiffs that adequate construction financing was arranged to assure the completion of the project. Mr. Snedigar testifed in his deposition on file in the instant case that the financial institution had committed to lend the partnership a total of $1.4 million. Based on the previous judgment in the foreclosure action, the Court ruled in the instant case that Mr. Snedigar was collaterally estopped to assert that the institution committed to lend more than $1.2 million.

" '[C]ollateral estoppel' bars relitigation of the same facts or issues necessarily determined in [a] former proceeding." *Liberty Mutual Insurance Co. v. Employers Insurance of Wausau*, 284 S. C. 234, 237 325 S. E. (2d) 566, 568 (Ct. App. 1985).[4] "[W]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *St. Philip's Episcopal Church v. South Carolina Alcoholic Beverage Control Commission*, 285 S. C. 335, 338, 329 S. E. (2d) 454, 456 (Ct. App. 1985). There are five exceptions to this general rule, none of which are applicable here. *See id.; Restatement (Second) of Judgments*, Section 29 (1982). A party precluded from relitigating an issue with an opposing party is also precluded from doing so with another person "unless the fact that he lacked a full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue." *St. Philip's Episcopal Church*, 285 S. C. at 338-39, 329 S. E. (2d) at 456.

The issue of whether the financial institution committed to lend the partnership more than $1.2 million was actually litigated and determined by the judgment in the foreclosure action. The judgment was both final and valid, and the determination was essential to the judgment. Mr. Snedigar does not argue that he lacked full and fair opportunity to litigate this issue and has not called to our attention any other circumstances which would justify affording him an opportunity to relitigate it. Therefore, the determination of the Court in the foreclosure action is conclusive in the instant action.

For these reasons, we affirm the part of the order of the Circuit Court which ruled that Mr. Snedigar is collaterally estopped to assert that the financial institution committed to lend the partnership more than $1.2 million.

---

[4] The doctine of collateral estoppel was conjured up some years ago by judges as a way of avoiding the perils inherent in having to decide the same thing twice—not the least of which is the embarrassment of deciding something one way on the first occasion and another on the second. *See Farmer v. Miller*, 39 S. C. L. (5 Rich.) 480 (1852).

## IV

One of the recently adopted Rules of Civil Procedure allows the Circuit Court to "make an order specifying the facts that appear without substantial controversy and what material facts are actually and in good faith controverted." Rule 56(d) of the S.C.R.Civ.P. Here, the Court found that there was no dispute as to certain facts which are set out in its order under the heading of "Findings of Fact." (It is of no consequence that the facts set out are not technically "findings.") Mr. Goepper, First Carolina and Mr. Snedigar challenge a number of these on appeal. We separately address the facts which they challenge.

## A

The Court found that, after Mr. Goepper advised Mr. Snedigar that the venture in limited partnership form would not be attractive to investors, Mr. Goepper advised Mr. Snedigar that a restructuring of the venture, with reduced costs, might result in an enterprise attractive to investors.

A reasonable inference from the testimony of Mr. Snedigar is that the general partnership form was the idea of Mr. Goepper, but Mr. Goepper indicated in his testimony that Mr. Snedigar originally had the idea.

If the order of the Court is read as finding that the idea of a general partnership originated with Mr. Goepper, the order is in error. However, we do not read the order to find who first broached the idea of the general partnership. As we read the order, the Court merely found that Mr. Goepper advised Mr. Snedigar that a reduction of costs by restructuring the venture might make the enterprise more attractive to investors. There does not appear to be any substantial controversy regarding this fact. We, therefore, conclude that the Court did not err in making this finding.

## B

The Court found that "Snedigar requested Goepper to work with him in the restructured enterprise. Goepper agreed. As a result, the Agreement forming Litchfield was prepared by Snedigar's counsel."

Mr. Goepper, First Carolina and Mr. Snedigar read the order of the Court to find that Mr. Goepper agreed to work

with Mr. Snedigar in restructuring the agreement forming the enterprise. If this is a correct reading of the order, the finding is controverted by the testimony of Mr. Goepper to the effect that he was not involved in the actual formation of the "general partnership offer." However, we do not read the order of the Court to make any such finding. As we read the order, the Court simply found that Mr. Goepper agreed to work in the restructured enterprise, not in restructuring the agreement forming it. Again, there does not appear to be any substantial controversy regarding this fact, and we, therefore, conclude that the Court did not err in making this finding.

## C

The Court found that "Goepper worked with Snedigar in the preparation of offering material including proforma capital and operating projections and project descriptions and data on Snedigar and First Carolina."

There is no dispute about the fact that Mr. Goepper helped prepare a document which he expected "to be delivered to a prospective investor." Mr. Goepper, First Carolina and Mr. Snedigar seem to argue that the Court erred in referring to this document as "offering material." However, they do not show how the use of this term prejudices them in any way. *See Sutton v. Sutton*, 291 S. C. 401, 410, 353 S. E. (2d) 884, 889 (Ct. App. 1987) ("An error not shown to be prejudicial does not constitute grounds for reversal.").

## D

The Court found that "the Agreement forming Litchfield was prepared by Snedigar's counsel."

This finding was apparently based on an uncontradicted affidavit filed by Mr. Snedigar in which he also states that one of the plaintiffs requested certain changes which were made in the agreement and that this plaintiff charged the partnership a legal fee for doing so. Mr. Snedigar does not argue that the agreement was not prepared by his counsel, but he argues the Court should have included in its order the additional facts stated in his affidavit. Since there is no substantial controversy regarding the fact found by the Court, there is no error. Of course, Mr. Snedigar will have

the opportunity to establish the additional facts stated in his affidavit after the case is remanded. *See* H. Lightsey and J. Flanagan, *South Carolina Civil Procedure* 358 (2d ed. 1985) (the procedure provided by Rule 56(d) for establishing facts is discretionary with the Circuit Court, and the order of the Court is not final and may be modified at any time). We are disinclined at this stage of the case to either split hairs or attempt to put hairs already split back together.

## E

The Court found that, under the agreement, Mr. Snedigar could be removed as managing partner by a two-thirds vote of the partners and that the plaintiffs owned less than two-thirds of the partnership.

Mr. Goepper, First Carolina and Mr. Snedigar concede that these findings are technically accurate but argue that they are misleading in that the Court ignored the fact that, when the interest of another partner who did not join in the suit is considered, the partners other than Mr. Snedigar held more than a two-thirds interest in the partnership and the further fact that Mr. Snedigar was removed by less than two-thirds of the partners under another provision of the agreement. Since the findings of the Court are accurate, there is no substantial controversy regarding them and, therefore, no error. *See id.* Moreover, Mr. Goepper, First Carolina and Mr. Snedigar point to nothing in the record supporting a finding that Mr. Snedigar was ever removed as managing partner. *See Porter Brothers, Inc. v. Specialty Welding Co.*, 286 S. C. 39, 331 S. E. (2d) 783 (Ct. App. 1985) (Court of Appeals cannot consider fact which does not appear in the transcript of record).

## F

The Court found that "all the plaintiffs, with the exception of Clemons and Miller, consulted with Goepper in making their decisions to invest in Litchfield."

While this fact may be inferred from the testimony of Mr. Goepper, it is not entirely clear from his testimony or from the record otherwise as to whether these were the only two plaintiffs who did not consult with him in deciding to invest in the enterprise. We, therefore, modify the order of the Court to delete this finding.

## G

The court found that the "limitations of Snedigar's authority as Managing Partner set out in the Agreement were, and were intended to be, substantially similar to those limitations incident to the authority of a General Partner in a limited partnership."

Since we have decided that the issue of whether the interests in the partnership are securities is an issue of fact, we further modify the order of the Court to eliminate this finding so that the ultimate trier of fact can decide this issue in its entirety.

## H

The Court recited in its order that: "The First Cause of Action alleges there were inaccurate statements and omissions in the sale of the interests to the plaintiffs, in violation of § 35-1-1210(2), with resulting liability under § 35-1-1490(2), Code of Laws of South Carolina." (Mr. Goepper, First Carolina and Mr. Snedigar apparently read this recitation as having the status of a finding of fact or conclusion of law by the Court.)

The plaintiffs concede in their brief that their first cause of action alleges only a violation of Section 35-1-1490(2).[5] The Court obviously made a mistake in refering to Section 35-1-1210(2), which does not give rise to a private cause of action but which contains language identical to that found in Section 35-1-1490(2). We, therefore, also modify the order of the Court so as to delete the reference to Section 35-1-1210(2).

Reversed in part, affirmed in part, modified in part and remanded.

GOOLSBY, J., and LITTLEJOHN, Acting J., concur.

---

[5] The plaintiffs say, somewhat peevishly, that Mr. Goepper, First Carolina and Mr. Snedigar are correct on this point "[w]ith the precision of Twiddledee and Twiddledum [sic]." *See Webster's New World Dictionary of the American Language* 1536 (2d College ed. 1982) ("twee dle dum and twee dle dee:] 1. two persons or things so much alike as to be almost indistinguishable 2. [T- T-] two almost identical brothers in *Through the Looking Glass*, by Lewis Carroll").