1762

Harvey A. BELL and Deborah H. Bell, Respondents v. Joseph E. BENNETT and Mary Clark, Appellants.

(414 S.E. (2d) 786)

Court of Appeals

*Peggy M. Chandler*, of *Belk, Cobb & Chandler*, Charleston, *for appellants.*

*Benjamin Goldberg* and *Barry I. Baker*, Charleston, *for respondents.*

Heard Dec. 9, 1991.

Decided Feb. 10, 1992.

SHAW, Judge:

This action was instituted by the Bells against their neighbor, Bennett, to enjoin Bennett from interfering with the completion of a fence. They further sought to recover damages for trespass against Bennett and Mary Clark.[1] Bennett counterclaimed seeking damages and removal of the fence and fill dirt based on the Bells alleged trespass and violation of a zoning ordinance. The matter was referred to a master-in-equity who granted the Bells an injunction and dismissed Bennett's counterclaim. Bennett appeals. We affirm.

The dispute in this case involves a small piece of land at the end of a drainage pipeline which runs along a thirty foot wide easement between the parties' land. (See attached plat). The land in question extends approximately thirty seven feet beyond where the marsh used to be and where it was at the time of this action. The owner of each bordering parcel claims ownership to that land. In a previous action between the Bells and Bennett, the circuit court found the Bells owned the property that was subject to the thirty foot easement and the Supreme Court affirmed. In the case at hand, Bennett claims the Bells own only the easement property for about two hundred feet towards the marsh, and not the marshland which has accreted or was filled in at the end of the pipeline. He claims title through a master's deed which he acquired after the Bells acquired their property. The Bells claim title to the land by virtue of their deed traced to a conveyance by Marguerite Clark.

The master made the following factual findings which are supported by the record.

Marguerite Clark was the owner of a large tract of land in Charleston County which she obtained in a family partition. Ms. Clark subsequently developed her property under the name of Clark's Point Subdivision. The southern boundary of this property is the northern boundary of the property of her brother, which was developed as a subdivision known as

---

[1] Clark is Bennett's mother-in-law and was joined as a party because of her alleged participation in the trespass. She apparently has no legal interest in the disputed property. For purposes of this appeal, we therefore refer only to Bennett as appellant.

South Riverview. The property to the south of Clark's Point is denoted "Julian Clark Lot."

A thirty foot easement *along the southern boundary of the Clark House Lot*, located in Clark's Point, was dedicated to the public. A pipe was placed, and is maintained by the County of Charleston, under the easement. The pipe serves the purpose of drainage to and from a pond or lake on the east and the tidal stream on the west.

In 1971 and 1973 Ms. Clark conveyed the Clark House Lot together with two other lots to Arthur Willis. The deed to the Clark House Lot recited the following:

> Said unnumbered lot butting and bounding east on Targave Road, north of Lot 32 and part of Lot 31, *west on Lot 31 and marshes of James Island Creek*, south on drainage easement at line of Julian Clark lot.
>
> This lot is conveyed subject to the general restrictions of Section 5, Clark's Point . . . except that the Grantee, his heirs and assigns, *may erect a fence extending along the entire lot line adjoining that property known as the Julian Clark Lot*, and may erect such other fences to enclose the side parts and rear of the house. (Emphasis added.)

Willis conveyed the Clark House Lot and the other two lots to Charles McCracken in November 1975. These lots were foreclosed by a savings and loan which subsequently conveyed the property to the Bells in 1982. It is undisputed the Bells are the successors in interest to Willis.

In January 1980, Bennett obtained title to the property known as Lot 11, South Riverview, formerly the Julian Clark Lot. On December 5, 1983, Bennett obtained a deed from the master-in-equity as a result of a proceeding involving Marguerite Clark, who was then non compos mentis. The Bells were not made parties to the action.

The master's deed conveyed:

> [A]ll of the right, title and interest whatsoever, if any, of Marguerite Clark, in and to the following described property, to wit:

\* \* \* \* \* \*

ALL that certain piece, parcel or tract of land lying, situate and being on James Island, Charleston County, South Carolina, consisting of a strip of land thirty feet wide extending along the southern boundary of the Clark House Lot for a distance of two hundred feet, more or less, bounded on the north by the Clark House Lot, on the west by the marsh, on the south by the Julian Clark Lot, and on the east by the right of way of Targave Road; being shown and designated as "30' Drainage Ease" on a plat entitled "Map of Section 5 Clarks Point James Island, Charleston County, South Carolina" by A.L. Glen ...

ALSO:

ALL that certain piece, parcel or tract of marsh land lying, situate and being on James Island, Charleston County, South Carolina, being bounded on the east by lands now or formerly of Marguerite Clark, on the north by a line extending from and along the same course as the northern boundary of the lands now or formerly of Marguerite Clark, on the west by. James Island Creek, and on the south by a line extending from and along the same course as the northern boundary of the Julian Clark Lot; being shown and designated as "Marshes of James Island Creek" on a plat entitled "Map of Section 5 Clarks Point James Island, Charleston County, South Carolina" by A. L. Glen ...

At the time of this deed, Ms. Clark had already conveyed all lots bordering on the marsh which she owned in Section 5, Clark Point and the lake lot she sold to the Bells.

In November 1984, the Bells instituted an action against Bennett to determine the ownership of the strip of land with the thirty foot drainage easement shown on the Glen Plat. The Bells contended they were the owners of the fee to the thirty foot easement by reason of their position as successors to Willis and their deed to the Clark House Lot from the savings and loan. Bennett asserted he was the owner of the property by reason of the 1983 master's deed.

The case was heard by Judge Walter J. Bristow, Jr., without a jury, and he found for the Bells. Judge Bristow

found Ms. Clark had conveyed title to the easement property to Willis in 1971 so that Bennett obtained nothing in 1983 by reason of the deed from the master. Judge Bristow also based his finding essentially upon the facts that the Bells owned the remainder of the thirty foot easement property and the lake (the reason for the easement), and that at the time of the master's deed in 1983, Ms. Clark had already conveyed all other lots in Section 5, Clark's Point, so that retention by her of the easement property would have been of no practical use to her. Judge Bristow found there was no reservation by Ms. Clark in her deed to Willis and, therefore, title to the thirty foot easement property passed to the Bells. The Supreme Court affirmed Judge Bristow's ruling.

Thereafter, the Bells began erecting an eight foot fence on the southern boundary line of the Clark House Lot. The Bells instituted this action claiming Bennett stopped them from completing construction of the fence. Bennett answered and counterclaimed alleging he was the owner of the marsh pursuant to the 1983 master's deed and that the previous action declared the Bells to be owners of the property subject to the thirty foot easement but only for a distance of two hundred or two hundred and four feet from the cul-de-sac at Targave Road west. Bennett claimed title to the marsh beyond the two hundred to two hundred and four foot mark by reason of the master's deed.

The master found the doctrines of *res judicata* and collateral estoppel applied such that the Bells were successors in interest to all right title and interest of Ms. Clark in and to the marshland at issue. He further found, considering the merits of the case, that the Bells were the owners of all interest of Ms. Clark in and to the disputed marshland and Ms. Clark had nothing to convey in 1983 when Bennett obtained the master's deed upon which he relies. He further dismissed Bennett's counterclaims for trespass and violation of a local zoning ordinance.

Bennett first contends the master erred in applying the doctrine of *res judicata* because the issue in the case at hand is the ownership of property beyond the approximately two hundred foot strip of land which was determined to be the southern boundary of the Clark House Lot. We disagree.

*Res judicata* applies where there is identity of parties, identity of subject matter, and adjudication of the issue in the former suit. *Hilton Head Center of S.C., Inc. v. Public Service Commission of S.C.*, 294 S.C. 9, 362 S.E. (2d) 176 (1987). Simply stated, the first suit involved a boundary dispute between the Bells and Bennett. The case at hand also involves a boundary dispute between the Bells and Bennett between the same parcels of land, each claiming ownership through the same deeds used in the first suit. While the order of Judge Bristow does not specifically state it is a determination of the ownership of the property to the west of the concrete pipe easement, the broad issue in that case was the boundary line between the identical parcels of property at issue in this case. A litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit. *Id.* 362 S.E. (2d) at 177. There is no question but that Bennett relies on the same master's deed to claim ownership of the property in contention in this suit as he relied on in the prior suit to claim ownership of the easement property. The issue of ownership of the property in dispute in the case at hand could, and should have been raised by Bennett in the prior suit. We therefore hold Bennett's attempt to question the boundary in the area of the accreted or filled in marshland is precluded by the doctrine of *res judicata.*

Bennett also contends the trial judge erred in applying the doctrine of collateral estoppel, as ownership of the land beyond the easement to the west, the marshland, was never litigated. Under the doctrine of collateral estoppel, once a judgment on the merits has been reached in a prior claim, the relitigation of those issues actually and necessarily litigated and determined in the first suit is precluded as to the parties and their privies in a subsequent action upon a different claim. *Richburg v. Baughman*, 290 S.C. 431, 351 S.E. (2d) 164 (1986). Collateral estoppel bars relitigation of the same facts or issues necessarily determined in a former proceeding. *Garrett v. Snedigar*, 293 S.C. 176, 359 S.E. (2d) 283 (Ct. App. 1987). When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in

a subsequent action between the parties, whether on the same or a different claim. *Id.* 359 S.E. (2d) at 289.

The master found that, having conveyed all other property in the area, retention of the marshland by Ms. Clark, as with the easement property, would have been of no practical use. And, "[t]he salient fact, among others adjudicated in the former action, was that Marguerite Clark intended to convey any property remaining in her name by reason of the Willis deed."

The deed by which Bennett claimed title to the marshland in this suit is the same deed by which he claimed title to the easement property in the former suit. Judge Bristow, having found retention of the easement property would have been of no practical value to Ms. Clark, necessarily found Ms. Clark did not intend to retain any such property interest in the area of this boundary dispute as it would have been of no practical use to her. *See Ward v. Woodward,* 287 S.C. 343, 338 S.E. (2d) 347 (Ct. App. 1985) citing *Coleman v. Gaskins,* 165 S.C. 301, 163 S.E. 790 (1932) (there is a rebuttable presumption that a party granting land does not intend to retain a narrow strip between the land sold and his property line, in the absence of express provisions to that effect in the deed, especially where it would cut the grantee off from valuable privileges, and where the strip is so narrow as to be of no practical use to the grantor); 26 C.J.S. *Deeds* § 104(a) (1956) (there is a presumption that a grantor intends to convey his entire interest, and a deed will be taken to convey the entire property and interest of the grantor in the premises unless something appears to limit it to a lesser interest).

The master's deed, having been found ineffective, to pass title of the easement property to Bennett as Ms. Clark had previously passed title to the same by way of the Willis deed, was likewise ineffective in passing title of the marshland in question to Bennett. Further, although Bennett questions an apparent inconsistency in the measurement used by the trial judge in the first suit, the order specifically states the "total easement as shown on Glen Plat of 1967 ran *from the tidal stream* on the west. . . . (emphasis added). For the above stated reasons, we find the master properly concluded the doctrine of collateral estoppel applied to the case at hand.

The master further held that, considering the merits of the case despite his holding on the application of *res judicata* and collateral estoppel, the Bells were the "owners of all right, title and interest of Marguerite Clark in and to the marshland west of the Clark House Lot." In so finding, the master noted (1) there was no reservation of interest in the disputed marshland in the deed from Marguerite Clark to Willis, (2) at the time of the master's deed, Marguerite Clark owned no other property in the immediate area, (3) Marguerite Clark would have had no access to the marsh even if she had retained an interest in the marsh, and (4) any such reservation would have been of no practical use to her. Thus, the master held, based on the *Coleman* case, that the Bells were the owners of any interest in the marshland to the west of their lot. Bennett does not except to nor argue against any of the above findings of the master. Rather, he asserts the presumption set forth in the *Coleman* case is inapplicable since the disputed property in the case at hand is marshland and not a narrow strip of land. We agree with the master that this distinction makes no difference and, since retention of an interest in the disputed marshland would have been of no practical use to Ms. Clark, there is a rebuttable presumption that she did not intend to retain the property in question. Having found the master properly ruled on this basis when considering the merits, we need not address his alternative rulings on the merits.

Bennett next contends the master erred in dismissing his counterclaim for trespass arguing that "[t]he evidence is undisputed and uncontradicted that . . . Bennett has been, and continues to be, in possession of the area of land" in dispute and, since the Bells have failed to establish any right, title or interest in the marshland, the Bells have trespassed on the land. We note the master ruled that any testimony relative to Bennett's possession of the disputed property was inadmissible as Bennett failed to allege possession and the Bells timely objected to the introduction of any testimony thereto. While Bennett excepted to the master's ruling on the admissibility of this evidence, he failed to argue the same in his brief and therefore has abandoned it. *See McGann v. Mungo*, 287 S.C. 561, 340 S.E. (2d) 154 (Ct. App. 1986) (failure to argue an exception constitutes abandonment of it.)

Accordingly, this unappealed ruling is the law of the case. *Chan v. Thompson*, 302 S.C. 285, 395 S.E. (2d) 731 (Ct. App. 1990). We therefore do not address Bennett's contention that the Bells failed to establish title to the disputed area and we affirm the master's dismissal of the counterclaim for trespass.

Finally, Bennett argues the master erred in dismissing his counterclaim for violation of a local zoning ordinance. He asserts the master dismissed the counterclaim on the basis that Bennett failed to show by the greater weight or by the preponderance of the evidence that he was specially damaged. In fact, the master found, in order to prevail in an action for alleged failure to comply with a zoning ordinance, a party must both plead and prove he was specially damaged. He went on to hold that Bennett failed in both respects. Once again, Bennett raised this issue by exception, but did not address the master's finding that he failed to plead special damages in his brief.

Rule 9(g), SCRCP provides, "When items of special damage are claimed, they shall be specifically stated." Special damages must be alleged in order to avoid surprise to the other party. *Sheek v. Lee*, 289 S.C. 327, 345 S.E. (2d) 496 (1986).

Further, even if Bennett had pleaded special damages and properly argued this issue in his brief, we agree with the master that he failed to meet his burden of proof. The only evidence submitted by Bennett was that the Bells' fence obstructed a view of the marsh from his property. There is no proof the fence in any way diminished the value of his property. We therefore find no error in the master's ruling on this issue.

The order below is affirmed.

Affirmed.

BELL and CURETON, JJ., concur.