593 S.E.2d 476

Keith P. QUIGLEY and Donna Quigley, individually and Donna Quigley, the duly appointed Guardian ad Litem for Kealy Quigley, a minor under the age of fourteen years, Appellants,

v.

John A. RIDER, M.D. and Medical Park Pediatricians, P.A., Respondents.

No. 3720.

Court of Appeals of South Carolina.

Heard Oct. 9, 2003.

Decided Dec. 22, 2003.

Rehearing Denied March 18, 2004.

478

James Edward Bell, III, of Sumter; for Appellants.

Hugh W. Buyck, Robert H. Hood, Roy P. Maybank, Deborah H. Sheffield, all of Charleston; for Respondents.

HOWARD, J.:

Keith P. Quigley, individually, and Donna Quigley, individually and on behalf of her minor child, Kealy Quigley ("Kealy"), brought this medical malpractice suit against John A. Rider, M.D. and Medical Park Pediatricians, P.A. (collectively "Rider"), alleging Rider committed malpractice by negligently administering a second and third diphtheria-pertussis-tetanus ("DPT") shot to Kealy after she displayed an adverse reaction to the first shot.[1] The circuit court dismissed the suit, holding the court did not have subject matter jurisdiction because Kealy's injuries were vaccine-related and were thus barred by the National Childhood Vaccine Injury Compensation Act, 42 U.S.C.A. § 300aa-1 to 300aa-34 (1988 as amended) ("the Act"). Donna Quigley appeals on behalf of Kealy ("Quigley"),

---

1. Keith and Donna Quigley sued Rider in their individual capacities. The circuit court dismissed their claims for failure to comply with the applicable statute of limitations. Neither Keith nor Donna Quigley filed an appeal from the dismissal of their claims. Thus, although Keith and Donna Quigley are listed as Appellants in their individual capacity, only Kealy's negligence claims are the subject of this appeal. Therefore, Keith and Donna Quigley's individual negligence claims against Rider are not addressed. *See Bell v. Bennett*, 307 S.C. 286, 294, 414 S.E.2d 786, 791 (Ct.App.1992) (holding an issue which is not argued in the brief is deemed abandoned on appeal); Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

arguing Kealy's injuries were not vaccine-related and Rider is equitably estopped from asserting the Act as a bar to the litigation. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Rider gave Kealy her first DPT shot in December 1988. Shortly thereafter, Kealy had adverse reactions to the shot. Quigley alleges that Rider knew of these adverse reactions but administered a second and third DPT shot to Kealy, both of which manifested corresponding adverse reactions. Subsequently, Kealy was diagnosed with severe mental and physical retardation, which Quigley attributes to the DPT shots.

Quigley filed this action, alleging Rider was negligent by administering the second and third DPT shots. Additionally, the complaint alleged Rider negligently failed to: 1) notify the Secretary of the Department of Health and Human Services ("the Secretary") regarding Kealy's reactions to the shots pursuant to 42 U.S.C.A. §§ 300aa–25(a) & (b);[2] and 2) inform Quigley of the dangers of the vaccine pursuant to 42 U.C.S.A. §§ 300aa–26(c) & (d).[3]

Rider moved for dismissal, arguing the circuit court lacked subject matter jurisdiction over the claim. The court granted the motion, ruling the Act required Quigley to file a petition with the Federal Claims Court prior to seeking state court remedies. Quigley appeals.

## LAW/ANALYSIS

### I. General Overview of the Act

■ Congress created the Act in 1986 for the purpose of establishing an efficient scheme of recovery for injuries and

---

2. Pursuant to the Act, vaccine administrators are required to make a permanent record of the vaccination. § 300aa–25(a). Additionally, they are required to report to the Secretary "the occurrence of any event set forth in the Vaccine Injury Table ... the occurrence of any contraindicating reaction to a vaccine which is specified in the manufacturer's package insert ... and such other matters as the Secretary may by regulation require." § 300aa–25(b).

3. The Act requires vaccine administrators to provide information to the legal guardians of any child receiving a DPT shot. The information must include the benefits of the vaccine, the risks associated with the vaccine, and the availability of the Act. §§ 300aa–26(c) & (d).

deaths traceable to vaccines, while providing protection for manufacturers and administrators of the vaccines. *See* H.R.Rep. No. 99–908, at 4 (1986), *reprinted in*, 1986 U.S.C.C.A.N. 6344, 6345 ("While most of the Nation's children enjoy greater benefit from immunization programs, a small but significant number have been gravely injured. These children are often without a source of payment or compensation for their medical and rehabilitative needs, and they and their families have resorted in greater numbers to the tort system for some form of financial relief."); *Shalala v. Whitecotton*, 514 U.S. 268, 269–70, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995) (citing H.R.Rep. No. 99–908, at 3–7 (1986)) ("For injuries and deaths traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); *Schafer v. American Cyanamid Co.*, 20 F.3d 1, 4 (1st Cir.1994) ("The Act seeks to achieve its cost-reducing purpose, not by denying compensation to victims . . . but by reducing the litigation and insurance costs related to lengthy, complex tort procedures and random large tort awards. The Act therefore imposes substantive and procedural limitations upon tort actions."); *see also* H.R.Rep. No. 99–908, at 6–7 (1986), *reprinted in*, 1986 U.S.C.C.A.N. 6344, 6348–49 (stating one of the primary purposes of the Act is to protect the vaccine market against the instability and uncertainty of tort litigation).

To meet the clearly stated goals of Congress, the Act provides a remedial scheme whereby a person who sustains vaccine-related injuries after the effective date of the Act must apply to the Federal Claims Court for compensation pursuant to the Act prior to seeking traditional tort remedies through state and federal courts. §§ 300aa–11(a)(2)(A)(i) and (ii); *see Shalala*, 514 U.S. at 270, 115 S.Ct. 1477 (citing § 300aa–11) ("A claimant alleging that more than $1,000 in damages resulted from a vaccination after the Act's effective date in 1988 must exhaust the Act's procedures and refuse to accept the resulting judgment before filing any *de novo* civil action in state or federal court.") (emphasis as in original). However, once an injured person has appropriately applied to the Federal Claims Court under the Act and received a judgment, the person may choose to accept the judgment or pursue tradi-

tional tort remedies in state and federal court. *See* § 300aa–21(a).

## II. Vaccine–Related Injury

■■■ Quigley argues the circuit court erred by dismissing Kealy's claims because Kealy's injuries are not "vaccine-related injuries" within the scope of the Act. Quigley contends although Kealy's injuries from the first DPT shot were "vaccine-related injuries," Kealy's injuries from the second and third DPT shots were not because Rider's administrations of the second and third DPT shots were intervening and superseding factors, breaking the causal chain between the DPT shots and Kealy's injuries. We disagree.

When the terms of a statute are clear and unambiguous, our inquiry ends, and we are required to enforce the terms of the statute as Congress drafted it. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241–42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

Section 300aa–11(a)(2)(A) states the Act only applies to a vaccine-related injury. The Act defines "vaccine-related injury" as "an illness, injury, condition, or death *associated with* one or more of the vaccines set forth in the Vaccine Injury Table ..." § 300aa–33(5) (emphasis added).

DPT is a vaccine listed within the Vaccine Injury Table. § 300aa–14. Furthermore, even under Quigley's arguments, Kealy's injuries are *"associated with "* the DPT shots.[4] Thus, under any view of the negligence alleged, Kealy's injuries are "vaccine-related injuries" within the scope of the Act. *See Amendola v. Secretary, Dep't of Health and Human Servs.,* 989 F.2d 1180, 1186–87 (Fed.Cir.1993) (holding injuries arising from allegations of medical malpractice stemming from multiple administrations of a vaccine within the Act are vaccine-related injuries subject to the Act). Therefore, we reject Quigley's assertion the claim against Rider is not vaccine-related.

---

4. During oral arguments, Quigley acknowledged Kealy's injuries are associated with the DPT shots but argued Rider's negligence was the paramount cause of Kealy's injuries.

## III.  Subject Matter Jurisdiction

■  Quigley argues the circuit court erred by ruling the Act deprives state courts of subject matter jurisdiction.  Quigley contends the statute merely creates a remedial process that must ordinarily be exhausted prior to a vaccine-related injury being brought in state court, and because Rider failed to comply with §§ 300aa–25(d) and –26(c) & (d), he is equitably estopped from asserting the statute as a defense.  We disagree.

■  Where a state statute conflicts with or frustrates federal law, the former must give way.  *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).  In the interest of avoiding unintended encroachment on the authority of the states, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find preemption.  Thus, preemption will not lie unless it is the clear and manifest purpose of Congress.  *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).  Evidence of preemptive purpose is sought in the text and structure of the statute at issue.  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

■  Federal law may preempt state law in three ways: first, Congress may expressly define the extent to which it preempts state law;  second, Congress may occupy a field of regulation, impliedly preempting state law;  and third, a state law may be preempted to the extent it conflicts with federal law.  *Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Mktg. & Bargaining Bd.*, 467 U.S. 461, 469, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984).

The Act provides:

(2)(A)  No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator . . . in a State . . . court for damages arising from a vaccine-related injury . . . associated with the administration of a vaccine after October 1, 1988 . . . unless a petition has been filed, in accordance with section 300aa–16 of this title . . . (B) *If a civil action which*

*is barred under subparagraph (A) is filed in a State or Federal court, the court shall dismiss the action.*

§ 300aa–11(a). (emphasis added).

We believe the statute states a clear and manifest purpose of Congress to occupy and regulate the field of vaccination litigation unless and until a plaintiff files suit in the Federal Claims Court and receives a judgment. Thus, it is unnecessary to determine if the statute removes subject matter jurisdiction from state courts or merely requires an exhaustion of remedies. Rather, regardless of the characterization, the clear, unambiguous language of the statute requires state courts to dismiss an action within the scope of the Act unless the action has first been brought before the Federal Claims Court. *See Shalala*, 514 U.S. at 270, 115 S.Ct. 1477 ("A claimant alleging that more than $1,000 in damages resulted from a vaccination after the Act's effective date in 1988 must exhaust the Act's procedures and refuse to accept the resulting judgment before filing any *de novo* civil action in state or federal court.") (citing § 300aa–11); *Strauss v. American Home Prod. Corp.*, 208 F.Supp.2d 711, 714 (2002) ("Simply put, individuals who qualify as Program claimants *must* file petitions in the Vaccine Court in order to pursue any vaccine-related claims at all.") (emphasis as in original).

In the present case, it is uncontested Rider is a vaccine administrator within the meaning of the Act. Furthermore, it is uncontested Quigley is attempting to bring a civil action for damages in excess of $1,000 in state court, without having filed a petition pursuant to section 300aa–16, for injuries sustained by Kealy after the effective date of the Act. Consequently, the Act required the circuit court to dismiss Quigley's claims. Because the circuit court complied with the Act, we hold the circuit court did not err.

## CONCLUSION

For the foregoing reasons, the decision of the circuit court, dismissing Quigley's claims is

**AFFIRMED.**

GOOLSBY and HUFF, JJ., concur.