1881

Geraldine BARTON, Appellant v.
SUPERIOR MOTORS, INC., Respondent.
(424 S.E. (2d) 524)

Court of Appeals

*Gerald F. Smith* and *James B. Richardson, Jr.,* Columbia, *for appellant.*

*James F. Walsh, Jr.,* Orangeburg, *for respondent.*

Heard Sept. 16, 1992.

Decided Oct. 26, 1992.

*Per Curiam:*

This case arises under the Motor Vehicle Unfair Trade Practices Act (the Act). Geraldine Barton, sued respondent, Superior Motors, Inc., for damages under the Act. The court directed a verdict for Superior. Barton appeals. We affirm.

Barton bought a used 1988 Pontiac from Superior in late March 1989. The car had just over 20,000 miles and had been in a wreck. It had been repaired in Superior's body shop. Ad-

ditionally, a new motor had been installed in the car.[1] For whatever reason, Superior did not inform Barton of the wreck. Barton made no inquiries of Superior concerning the condition of the car at the time of purchase. The car was originally sold by Superior to a third party. The third party defaulted in his payments and the finance company repossessed the car. Superior then obtained ownership of the car from the finance company.

Immediately after buying the car, Barton had engine and other mechanical problems. Over the course of several months, these problems were corrected at no expense or minimal expense to Barton. Melvin, Barton's son and the principal driver of the car, testified they were experiencing no real problems with the car at the time of trial. He did testify the car tires wear out fast, but acknowledged he buys used tires for the car. At the time of trial, the car had been driven approximately 42,000 miles by the Bartons.

James Guthrie, the owner and general manager of Superior, testified Superior's body shop performed over $2800 worth of body repairs to the car although he was not aware of it at the time of sale.[2] At the time the body work was performed, the car was owned by a third party. Guthrie was personally unaware of the wreck and body repairs at the time of sale. The salesman with whom Barton dealt did not testify.

Barton paid $8,841.21 for the car. In response to her counsel's question regarding the value of the car at the time of purchase, she responded:

A. Well, seem like it shouldn't a been that much—no more than maybe half of what I paid for it.

Q. About half of what you paid for it?

A. Yeah, for the problems I been having.

At the conclusion of Barton's testimony, the trial court granted Superior's motion for a nonsuit (directed verdict) stating Barton (1) failed to prove Superior had a duty to disclose the alleged defects; and (2) failed to prove any damages caused by failure to disclose the alleged defects.

---

[1] The record does not reflect whether the installation of the new motor was related to the wreck.

[2] Guthrie testified that all new parts were installed on the car and there was no frame damage.

Viewed in the light most favorable to Barton, we hold the evidence presented a jury question whether or not Superior had a duty to disclose the car had been wrecked. We agree, however, that Barton has failed to prove the failure to disclose the wreck caused her damage.

S.C. Code Ann. § 56-15-40(1) (Rev. 1991) provides in part:

It shall be deemed a violation of paragraph (a) of § 56-14-30 for any . . . motor vehicle dealer to engage in any action which is arbitrary, in bad faith, unconscionable *and which causes damage to any of the parties or to the public.* (Emphasis ours.)

The measure of damages for the sale of a defective vehicle is the difference in fair market value between the car, having been wrecked, and the value of the car had it not been wrecked at time of sale. *See Sparrow v. Toyota of Florence, Inc.,* 302 S.C. 418, 396 S.E. (2d) 645 (Ct. App. 1990) (action for fraud in sale of goods). Ordinarily a property owner, who is familiar with his property and its value, may give his estimate of its value or the damage inflicted upon it even though he is not an expert. *Whisenant v. James Island Corp.,* 277 S.C. 10, 281 S.E. (2d) 794 (1981). Unless the property owner's lack of knowledge of the value of his property is so complete so as to render it worthless, it is for a jury to assess the probative value of his testimony. *Seaboard Coast Line R.R. v. Harrelson,* 262 S.C. 43, 202 S.E. (2d) 4 (1974).

The only reference to damages in the record is Barton's bare statement the car should not have been worth more than half of what she paid for it. She then stated the basis for her opinion was the fact she had problems with the car. There was no testimony the wreck contributed to those problems.[3] In fact, she and her son testified the problems had been corrected by the time of trial.

In summary, there was no testimony from which a jury could have concluded that at the time of purchase the car was worth less than what Barton paid for it solely by reason of the fact it had been wrecked. We cannot take judicial notice, as

---

[3] The full content of Barton's testimony shows the "problems" she referred to were equipment or engine problems, overheating, a defective wiper control, a flywheel problem, and the car stopped running (engine replaced).

suggested by appellant, that a wrecked car is inherently worth less than one which has not been wrecked.

Accordingly, we affirm the order of the trial court.

Affirmed.