514 S.E.2d 601

Margaret H. ALLISON, Appellant,

v.

CHARTER RIVERS HOSPITAL, INC., Respondent.

No. 2965.

Court of Appeals of South Carolina.

Submitted Feb. 9, 1999.

Decided March 15, 1999.

Robert J. Thomas and Robert P. Wood, both of Rogers, Townsend & Thomas, of Columbia, for appellant.

Monteith P. Todd, of Sowell, Todd, Laffitte, Beard & Watson, of Columbia, for respondent.

HEARN, Judge:

Margaret Allison brought this action against Charter Rivers Hospital, Inc. for injuries she allegedly sustained while participating in a ropes course [1] as part of her treatment at Charter. The trial court denied Allison's motion to strike Charter's defense of assumption of risk as a total bar to her recovery and presented the issue to the jury. The jury returned a

---

[1]. A "ropes course" is an activity used to build trust and self-confidence. In the activity involved in this case, the participants walked across a rope strung between trees while holding onto an overhead wire. While one participant crosses the rope, four others follow on the ground, acting as spotters to catch the participant if he or she falls.

general verdict in favor of Charter. Allison appeals. We affirm.[2]

## FACTS

Allison entered Charter in April of 1992 for treatment of her addiction to prescriptive medication. During the years preceding her admission, she had led a very inactive lifestyle.

Five days after she entered Charter, she learned she was scheduled to participate in a ropes course. Allison inquired about the ropes course from Katherine McCall, who was in charge of the activity. Katherine explained the course involved walking on a rope between three trees and that the activity would help Allison to build trust. Allison expressed to Katherine her reservations about doing anything physical because of her lack of past physical activity. Allison also asked several patients about the ropes course. A woman in her seventies and a younger girl with back problems told Allison that they chose not to participate in the course. After collecting this information, Allison decided to participate in the course.

At the beginning of the activity, Allison and the other participants circled around Katherine. Katherine asked them to raise their hands and pledge to at least attempt the activity. The group warmed up with a game similar to tag. As soon as she started to run, Allison fell on her left knee. She immediately told Katherine about her injury. Katherine instructed her to sit out the remainder of the tag game, which lasted around three or four minutes. The group then proceeded to the ropes course. While walking to the course, Allison again expressed her reservations about participating in the activity. Katherine asked her to at least try and assured her that if she fell, the group would catch her.

According to Allison, the purpose of the ropes course was to build trust and self-confidence. The object of the exercise was for the group to catch the participant as she fell, thereby building the participant's trust in the group. Allison explained that a participant was to walk backwards on a rope strung

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

between trees while holding onto a wire from above. The bottom rope was approximately two and a half feet from the ground at the base trees but sagged and swayed in the middle. She stated the participants were instructed to let go of the wire from above if they fell. Four members of the group, acting as spotters, were to follow Allison to catch her if she fell.

Allison watched all the other participants and waited until last to try the tension traverse herself. She saw a male patient fall and scrape his shin. When it was her turn, the group lifted her up onto the rope, and she caught hold of the top wire. She testified she was about four feet from the tree when she fell. The group was not able to break her fall, and she landed on her right knee. Katherine and some of the participants tried to lift her, but Allison passed out from the pain. She was taken by ambulance to the emergency room at Lexington Medical Center.

Allison filed a complaint against Charter in October of 1993. Charter asserted as defenses a general denial of negligence, assumption of risk, and contributory negligence. At the close of the evidence, Allison moved to strike the defense of assumption of risk. She argued that because of the South Carolina Supreme Court's decision abolishing contributory negligence as a complete bar to recovery,[3] the doctrine of assumption of risk was narrowly limited and did not apply to her case. In the alternative, she argued that if the doctrine of assumption of risk applied, there was no evidence in the record to support the defense. The trial court denied the motion. The jury returned a general verdict in favor of Charter.

## DISCUSSION

■ Allison argues the defense of assumption of risk was not available to Charter as a complete defense to her action.

---

3. The South Carolina Supreme Court abrogated the doctrine of contributory negligence in favor of comparative negligence for all causes of action arising on or after July 1, 1991. *Nelson v. Concrete Supply Co.,* 303 S.C. 243, 399 S.E.2d 783 (1991). This cause of action arose in 1992. In response to Allison's motion to strike, Charter withdrew the defense of contributory negligence at the trial.

She relies on this court's decision in *Davenport v. Cotton Hope Plantation Horizontal Property Regime*, 325 S.C. 507, 482 S.E.2d 569 (Ct.App.1997), *aff'd as modified*, 333 S.C. 71, 508 S.E.2d 565 (1998). In *Davenport*, we held "assumption of risk is no longer a complete defense to an injured person's negligence claim. Assumption of risk is to be treated as another facet of comparative negligence rather than as an absolute bar to recovery." *Davenport*, 325 S.C. at 516, 482 S.E.2d at 574. The South Carolina Supreme Court recently affirmed this holding and abolished assumption of risk as a bar to absolute recovery. *Davenport*, 333 S.C. 71, 508 S.E.2d 565 (1998). The court held "that a plaintiff is not barred from recovery by the doctrine of assumption of risk unless the degree of fault arising therefrom is greater than the negligence of the defendant." *Id.* at 87, 508 S.E.2d at 573–74.

The supreme court, however, limited its ruling to apply only to *Davenport* and to all causes of action arising or accruing after November 8, 1998, the date of the supreme court's opinion. The court held: "Thus, except for this case, if a cause of action arose or accrued prior to our decision today, it will be governed by the common law form of assumption of risk, if applicable, as it existed under South Carolina case law before this opinion." *Davenport*, 333 S.C. at 87–88, 508 S.E.2d at 574. In view of the supreme court's decision to limit the application of its holding in *Davenport*, we hold the trial judge did not err in refusing to strike the defense of assumption of risk as a complete bar to Allison's action.

■ Allison next asserts there was no evidence in the record to support the defense of assumption of risk. We disagree.

■ The defense of assumption of risk is generally a question of fact for the jury. *Baxley v. Rosenblum*, 303 S.C. 340, 347, 400 S.E.2d 502, 507 (Ct.App.1991). Allison's motion to strike the defense of assumption of risk was essentially a motion for a directed verdict on the issue. When ruling on a motion for a directed verdict, the trial judge must view the evidence in the light most favorable to the party opposing the motion. *Moore v. Levitre*, 294 S.C. 453, 454–5, 365 S.E.2d 730, 730 (1988); *Baxley*, 303 S.C. at 346, 400 S.E.2d at 506. If the evidence supports more than one reasonable inference with

respect to a claim or defense, the judge must deny the motion and submit the case to the jury. *Moore,* 294 S.C. at 455, 365 S.E.2d at 730; *Baxley,* 303 S.C. at 346, 400 S.E.2d at 506. This court may only reverse the denial of a motion for directed verdict when there is no evidence to support the ruling below. *Creech v. South Carolina Wildlife & Marine Resources Dep't,* 328 S.C. 24, 28–9, 491 S.E.2d 571, 573 (1997).

■ Under prior case law, the defense of assumption of risk required four elements: "(1) the plaintiff must have knowledge of the facts constituting a dangerous condition; (2) the plaintiff must know the condition is dangerous; (3) the plaintiff must appreciate the nature and extent of the danger; and (4) the plaintiff must voluntarily expose himself to the danger." *Davenport,* 333 S.C. at 79, 508 S.E.2d at 569; *see also Senn v. Sun Printing Co.,* 295 S.C. 169, 173, 367 S.E.2d 456, 458 (Ct.App.1988).

The ropes course instructor and several patients explained the ropes course to Allison. Allison was aware that two patients had elected not to participate in the course because of their physical condition. She was also aware the object of the activity was for the participants to be caught by their fellow participants as they fell. Furthermore, before attempting the tension traverse, Allison observed the other participants' attempts, including that of a man who skinned his shin and required medical attention.

We find the record contains sufficient evidence of the elements of assumption of risk to create a jury issue.

**AFFIRMED.**

HUFF and STILWELL, JJ., concur.