640 S.E.2d 486

**Danny K. WRIGHT, Respondent,**

v.

**Ralph C. CRAFT d/b/a Craft Auto Mart, Inc., Appellant.**

**No. 4181.**

Court of Appeals of South Carolina.

Heard Nov. 9, 2006.
Decided Nov. 27, 2006.
Rehearing Denied Jan. 29, 2007.

8

Timothy G. Quinn, of Columbia, for Appellant.

C. Steven Moskos of Charleston, for Respondent.

ANDERSON, J.:

Danny K. Wright initiated an action against Ralph C. Craft, d/b/a/ Craft Auto Mart, Inc., for revocation of acceptance, breach of contract, negligence, constructive fraud, fraud, violation of the Unfair Trade Practices Act, §§ 39–5–10 to –560 (UTPA), violation of the Regulation of Manufacturers, Distributors, and Dealers Act, §§ 56–15–10 to –600 (Dealers Act), and violation of the Federal Odometer Statute. The trial court granted Craft summary judgment on Wright's causes of action for fraud and violation of the Federal Odometer Statute. Wright withdrew his causes of action for revocation of acceptance, breach of contract and constructive fraud. The jury rendered verdicts as follows:

(1) Negligence—The jury awarded Wright actual damages of $25,578 and punitive damages of $12,789.

(2) UTPA—The jury awarded Wright actual damages of $25,578.

(3) Dealers Act—The jury awarded Wright actual damages of $51,156 and punitive damages of $12,789.

On Wright's motion to treble damages under the UTPA, the trial court required Wright to elect his remedy. Wright chose to proceed under the UTPA. The trial court trebled the UTPA damages and awarded Wright attorney's fees in the amount of $70,650 and costs in the amount of $4656.59. Craft filed a motion for a judgment non obstante veredicto (JNOV) and a motion to strike damages, which were denied by the trial court.

### FACTUAL/PROCEDURAL BACKGROUND

Wright purchased a used 2001 Ford F–150 (Truck) from Craft Auto Mart, Inc. (Craft Auto) in July of 2002. When purchased by its first owner the Truck came with a 36,000 mile bumper-to-bumper warranty, which was transferable to subsequent owners. In November of 2001, the Truck was involved in an accident in which it rolled and flipped over. The incident damaged the right quarter panel and the hood of the Truck, broke windows, and caused both air bags to deploy.

State Farm Insurance Company bought the Truck from the first owner.

Craft purchased the Truck at a vehicle auction to repair and sell at Craft Auto. The purchase was arranged by an acquaintance, Jim Spoon, whom Craft instructed to buy the Truck if "just the sheet metal was damaged." [1]

Craft had the Truck repaired at Bestway Body Shop. Replacements for some of the damaged parts were obtained from the Ford Dealership and others came from Keystone Automotive Industries. Lindsay Brothers supplied a used airbag.[2] Craft saw the Truck about a week after the repair work had begun. He observed some of the wrecked parts and noted that the original airbags had deployed during the wreck. Craft claimed his observations supported his belief that the Truck only had sheet metal damage.

Craft advertised the Truck for sale as a "one-owner vehicle" and did not reveal that the Truck had been wrecked and repaired. Wright saw the advertisement, contacted Craft Auto, and questioned Zack Rickard, an employee, about the Truck's mileage, warranty, and condition. Rickard informed Wright the Truck had ten thousand miles, came with a warranty, and had nothing wrong with it. Wright specifically asked Rickard if the Truck had any damage and Rickard responded that it did not.

Wright, accompanied by Rickard, test drove the Truck and noticed the check engine and seat belt lights came on. Rickard assured Wright "there would be no problem" because it was covered and would be checked. In addition, Wright observed some exterior damage near the driver's side door of the Truck and was advised "it was done in the parking lot like somebody opened the door and hit it, or it got hit with a grocery cart." Wright said he would buy the Truck if "everything that I see wrong with it when I'm looking at it, he'd have it fixed before I bought it."

---

1. Craft testified at trial that "sheet metal damage" meant that the frame was not damaged.

2. The record contains conflicting reports as to whether one or two airbags were replaced.

In attending to the warning lights, Craft took the Truck to Bob Bennett Ford, where he learned that any Truck parts damaged in the wreck or painted because of the wreck would not be covered by the warranty. Moreover, Craft was warned the warranty did not cover parts and components not replaced by genuine Ford parts. Components not covered by warranty included the used airbags from Lindsay and the generic parts from Keystone.

Craft never told Wright the Truck had been wrecked, purchased from State Farm at auction, and repaired. He maintained he did not know what was covered by the factory warranty, nor did he inform Wright about parts he specifically knew were not under factory warranty.

The Buyer's Guide Wright received at the time of purchase stated the Truck was sold "as is-no warranty." Wright inquired about the extent of the warranty and Craft wrote on the back of the Buyer's Guide "factory warranty, if applicable." When Wright asked why the factory warranty was qualified with "if applicable," Craft claimed he did not know how much time was remaining on the factory warranty. Craft made an additional notation on the back of the Buyer's Guide indicating the Truck had "previous paintwork."

While driving the Truck in September of 2002, Wright observed an illuminated check engine light, which was repaired under warranty at a Ford dealership. A month or so later, Wright experienced the Truck shaking and shutting off. He returned the Truck to the Ford dealership in October of 2002. David McCauley, a mechanic from the Ford dealership who owned the same model F–150, lifted the hood on his own truck to show Wright what the interior under the hood should look like. McCauley explained that if wreck damage was causing the Truck's trouble, the repair would not be covered under warranty. After learning the Truck had been wrecked, Wright called to complain to Craft, who told Wright there was nothing he could do. Wright grew concerned that the Truck was not safe to drive.

At trial, Ford Motors field service engineer, Stuart Sonnen, testified that repairs are not covered under a factory warranty if the parts used in the repairs are not manufactured by Ford or if the parts are not installed by an authorized Ford agent.

Ray Morris, a former car salesman, averred that the Truck had serious safety concerns. Moreover, he claimed that in the retail market, the Truck was valueless in its current condition. John Disher, a Ford-certified body shop owner who qualified as an expert in the field of automotive repair, maintained the welds formed to repair the Truck were not satisfactory and did not meet factory specifications. Disher expressed concern about what might happen to the Truck in another accident. "The structural integrity [of the Truck] ha[d] not been restored and it would probably collapse."

Wright claimed his losses as a result of purchasing the Truck from Craft included: (1) $33.18 to have the hood fixed; (2) sixteen Truck payments totaling $6395.04; (3) twelve Truck payments after refinancing totaling $3739.80; (4) $12,766.21 remaining on his Truck loan obligation; and (5) negative equity on the vehicle he traded in for the Truck in the amount of $2643.92. Wright's total damages amounted to $25,578.15.

In Craft's statement of issues on appeal he contends the trial court erred in failing to: (1) grant the motion for directed verdict; (2) grant the motion for JNOV; (3) strike damages from the UTPA cause of action; (4) allow the entry of the Truck into evidence; (5) admit Wright's loan application into evidence; and (6) grant the motion for summary judgment. Additionally, Craft appeals the jury's verdict on the ground it was the result of undue passion and prejudice. Apart from his statement of issues on appeal, in his brief Craft asserts that Wright should have been estopped from alleging he suffered damages under the UTPA.

## STANDARD OF REVIEW

When legal and equitable actions are maintained in one suit, the court is presented with a divided scope of review, and each action retains its own identity as legal or equitable for purposes of review on appeal. *Blackmon v. Weaver*, 366 S.C. 245, 248–49, 621 S.E.2d 42, 44 (Ct.App.2005); *Kiriakides v. Atlas Food Sys. & Servs., Inc.*, 338 S.C. 572, 580, 527 S.E.2d 371, 375 (Ct.App.2000) (citations omitted). The proper analysis is to view the actions separately for the purpose of

18

determining the appropriate standard of review. *Jordan v. Holt,* 362 S.C. 201, 205, 608 S.E.2d 129, 131 (2005).

## Actions at Law

■ In an action at law, on appeal of a case tried by a jury, the jurisdiction of the appellate court extends merely to the correction of errors of law, and a factual finding by the jury will not be disturbed unless a review of the record discloses there is no evidence which reasonably supports the jury's findings. *Erickson v. Jones Street Publishers, L.L.C.,* 368 S.C. 444, 464, 629 S.E.2d 653, 663–64 (2006); *R & G. Const. Inc., v. Lowcountry Reg'l Transp. Auth.,* 343 S.C. 424, 431, 540 S.E.2d 113, 117 (Ct.App.2000) *cert. dismissed* (July 22, 2002) *rehearing denied* (Aug 21, 2002). *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976).

■ When reviewing a motion for directed verdict or JNOV, an appellate court must employ the same standard as the trial court. *Law v. S.C. Dep't of Corr.,* 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006); *Proctor v. Dep't of Health and Envtl. Control,* 368 S.C. 279, 292, 628 S.E.2d 496, 503 (Ct.App. 2006) *(citing Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 27–28, 602 S.E.2d 772, 782 (2004)); *The Huffines Co., L.L.C. v. Lockhart,* 365 S.C. 178, 187, 617 S.E.2d 125, 129 (Ct.App.2005). On appeal from an order denying a directed verdict, an appellate court views the evidence and all reasonable inferences in a light most favorable to the non-moving party. *Swinton Creek Nursery v. Edisto Farm Credit,* 334 S.C. 469, 476, 514 S.E.2d 126, 130 (1999); *Mullinax v. Brown Amusement,* 326 S.C. 453, 456, 485 S.E.2d 103, 105 (Ct.App.1997) *aff'd* 333 S.C. 89, 508 S.E.2d 848 (1998). "The appellate court must determine whether a verdict for the opposing party would be reasonably possible under the facts as liberally construed in his favor." *Jones v. General Electric Co.,* 331 S.C. 351, 356, 503 S.E.2d 173, 176 (Ct.App.1998).

■ This court will reverse the trial court's ruling on a directed verdict motion only if no evidence exists to support the ruling, or if the decision was controlled by an error of law. *Pye v. Estate of Fox,* 369 S.C. 555, 563, 633 S.E.2d 505, 509 (2006); *McMillan,* 367 S.C. at 564, 626 S.E.2d at 886; *Clark v. S.C. Dep't of Pub. Safety,* 362 S.C. 377, 382–83, 608 S.E.2d 573,

576 (2005); *Swinton Creek Nursery,* 334 S.C. at 477, 514 S.E.2d at 130; *Welch v. Epstein,* 342 S.C. 279, 300, 536 S.E.2d 408, 418 (Ct.App.2000). When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence. *Erickson,* 368 S.C. at 463, 629 S.E.2d at 663.

### Actions at Equity

In an action at equity, a reviewing court can find facts in accordance with its own view of the preponderance of the evidence. *Key Corporate Capital, Inc. v. County of Beaufort,* 360 S.C. 513, 516, 602 S.E.2d 104, 106 (Ct.App.2004). Estoppel is an equitable concept. *Cothran v. Brown,* 357 S.C. 210, 215, 592 S.E.2d 629, 631 (2004); *West v. Newberry Elec. Co-op.,* 357 S.C. 537, 541, 593 S.E.2d 500, 502 (Ct.App.2004); *Quinn v. Sharon Corp.,* 343 S.C. 411, 416, 540 S.E.2d 474, 476 (Ct.App.2000) (Anderson, J., concurring in result only). However, a distinction should be made between cases in which the defendant's answer asserts merely an equitable defense, and cases in which the answer seeks affirmative equitable relief. *Rogers v. Nation,* 284 S.C. 330, 332–33, 326 S.E.2d 182, 183 (Ct. App 1985). In the case of an equitable defense, the nature of the action remains the same. *Id.; but see Brown v. Chandler,* 50 S.C. 385, 27 S.E. 868 (1897) (holding an equitable defense in a legal action receives equity review).

### *LAW/ANALYSIS*

Initially, we address several procedural matters, noting that a number of Craft's issues on appeal are not preserved for our review. When a defendant moves for a directed verdict under Rule 50, SCRCP at the close of the plaintiff's case, he must renew that motion at the close of all evidence. *Hendrix v. E. Distribution, Inc.,* 316 S.C. 34, 37 446 S.E.2d 440, 442 (Ct.App.1994) *aff'd in result,* 320 S.C. 218, 464 S.E.2d 112 (1995). *See State v. Bailey,* 368 S.C. 39, 43, 626 S.E.2d 898, 900 (Ct.App.2006) ("If a defendant presents evidence after the denial of his motion for a directed verdict at the close of the [plaintiff's] case, he must make another motion for a directed verdict at the close of all evidence in order to appeal the sufficiency of the evidence."); *State v. Rosemond,*

348 S.C. 621, 560 S.E.2d 636 (Ct.App.2002), *aff'd as modified* 356 S.C. 426, 589 S.E.2d 757 (2003). Otherwise, this court is precluded from reviewing the denial of the motion on appeal. *Hendrix,* 316 S.C. at 37, 446 S.E.2d at 442. Craft moved for a directed verdict at the close of Wright's case, but failed to renew the motion after concluding his presentation of evidence. Consequently, the denial of Craft's motion is not preserved for our review.

Concomitantly, a motion for JNOV under Rule 50(b), SCRCP is a renewal of a directed verdict motion. *Glover v. N.C. Mut. Life Ins. Co.,* 295 S.C. 251, 256, 368 S.E.2d 68, 72 (Ct.App.1988). When a party fails to renew a motion for a directed verdict at the close of all evidence, he waives his right to move for JNOV. *Henderson v. St. Francis Cmty. Hosp.,* 295 S.C. 441, 446, 369 S.E.2d 652, 656 (Ct.App.1988). Because Craft did not renew his motion for a directed verdict at the close of all evidence, there is no JNOV motion to review. In addition, Craft identified the denial of the JNOV motion in his statement of issues on appeal but failed to address it in his brief. "An issue raised on appeal but not argued in the brief is deemed abandoned and will not be considered by the appellate court." *Fields v. Melrose Ltd. P'ship,* 312 S.C. 102, 106, 439 S.E.2d 283, 284 (Ct.App.1993); *Bell v. Bennett,* 307 S.C. 286, 294, 414 S.E.2d 786, 791 (Ct.App. 1992).

The record indicates Craft did not comply with the time requirements under Rule 59, SCRCP in filing his motion to strike damages. Moreover, the denial of the motion to strike damages is listed in his statement of issues on appeal, but Craft did not address the denial in his brief. The issue is, therefore, deemed abandoned. *Id.* Likewise, Craft's argument that the jury's verdict was the result of undue passion and prejudice was included in his statement of issues on appeal. Craft failed to pursue the issue in his brief and it is not properly before this court. *Id.*

In his brief Craft advanced an argument grounded on a general estoppel theory. However, Craft failed to plead estoppel as a defense in his answer to Wright's complaint. "Every defense, in law or fact, to a cause of action in any pleading, whether a claim, counterclaim, cross-claim, or third-

party claim, shall be asserted in the responsive pleading thereto. . . ." Rule 12, SCRCP. "[E]stoppel must be affirmatively [pleaded] as a defense and cannot be bootstrapped onto another claim." *Collins Entm't, Inc. v. White*, 363 S.C. 546, 562, 611 S.E.2d 262, 270 (Ct.App.2005) (*citing* Rule 8, SCRCP); *Provident Life & Accident Ins. Co. v. Driver*, 317 S.C. 471, 478, 451 S.E.2d 924, 929 (Ct.App.1994)). The failure to plead an affirmative defense is deemed a waiver of the right to assert it. *See, e.g., Adams v. B & D, Inc.*, 297 S.C. 416, 419, 377 S.E.2d 315, 317 (1989) (ruling that an affirmative defense not pleaded in the answer or raised before the trial court will not be addressed on appeal). Additionally, Craft failed to raise the estoppel issue to the trial court for a ruling. Accordingly, that issue is not preserved for this court's review. *Ulmer v. Ulmer*, 369 S.C. 486, 491, 632 S.E.2d 858, 861 (2006) (*citing In re Michael H.*, 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004) ("An issue may not be raised for the first time on appeal. In order to preserve an issue for appeal, it must be raised to and ruled upon by the trial court.")); *Pye v. Estate of Fox*, 369 S.C. 555, 565, 633 S.E.2d 505, 510 (2006); *Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 510–11, 598 S.E.2d 712, 715 (2004); *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779 (2004). Furthermore, Craft did not set forth the estoppel argument in his statement of issues on appeal. Rule 208(b)(1)(B), SCACR requires an appellant's initial brief to contain "[a] statement of each of the issues presented for review." *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) ("No point will be considered which is not set forth in the statement of issues on appeal.") (*citing State v. Bray*, 342 S.C. 23, 28, 535 S.E.2d 636, 639, n. 2 (2000)); *State v. Prioleau*, 345 S.C. 404, 411, 548 S.E.2d 213, 216 (2001); *Barnes v. Cohen Dry Wall, Inc.*, 357 S.C. 280, 287, 592 S.E.2d 311, 314, n. 11 (Ct.App.2003) (declining to address issues that were not set forth in appellant's statement of issues on appeal). Luculently, the issue of estoppel is not properly before this court.

## I. UTPA

Craft challenges the trial court's ruling in denying his motion for a directed verdict on Wright's UTPA cause of

action. He contends he was entitled to a directed verdict on the following grounds:

(A) Damages—The damages awarded by the jury were improper under the UTPA; Wright suffered no damages;

(B) Deceptive Act—Wright failed to demonstrate Craft's conduct was deceptive because Craft did not have a duty to disclose; and

(C) Craft's act or practices did not impact the public interest.

In ruling on a motion for directed verdict, the trial court must view the evidence and all its reasonable inferences in the light most favorable to the nonmoving party. *Long v. Norris & Assocs. Ltd.*, 342 S.C. 561, 568, 538 S.E.2d 5, 9 (Ct.App.2000). When the evidence yields only one inference, a directed verdict in favor of the moving party is proper. *Id.* On the other hand, the trial court must deny a motion for a directed verdict when the evidence yields more than one inference or its inference is in doubt. *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006); *Bailey v. Segars*, 346 S.C. 359, 365, 550 S.E.2d 910, 913 (Ct.App.2001); *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999). If more than one inference can be drawn from the evidence, a jury issue is created and the motion should be denied and the case must be submitted to the jury. *Jinks v. Richland County*, 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003); *Long*, 342 S.C. at 568, 538 S.E.2d at 9; *Adams v. G.J. Creel Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995). However, this rule does not authorize the submission of speculative, theoretical, and hypothetical views to the jury. *Proctor v. Dep't of Health and Envtl. Control*, 368 S.C. 279, 292–93, 628 S.E.2d 496, 503 (Ct.App.2006). The issue must be submitted to the jury whenever there is material evidence tending to establish the issue in the mind of a reasonable juror. *The Huffines Co., LLC v. Lockhart*, 365 S.C. 178, 188, 617 S.E.2d 125, 130 (Ct.App.2005). In deciding whether to grant or deny a directed verdict motion, the trial court is concerned only with the existence or nonexistence of evidence. *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 15, 567 S.E.2d 881, 888 (Ct.App.2002); *Long*, 342 S.C. at 568, 538 S.E.2d at 9.

■■■ The evidence in this case must be evaluated in light of the legislative mandate set forth in sections 39–5–10 to –560 of the South Carolina Code (1976 & Supp.2005). The UTPA declares "unfair or deceptive acts or practices in the conduct of any trade or commerce ... unlawful." S.C.Code Ann. § 39–5–20(a) (1976). The terms "trade" and "commerce" "include the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and include any trade or commerce directly or indirectly affecting the people of this State." S.C.Code Ann. § 39–5–10(b) (1976). "An unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive." *Wogan v. Kunze*, 366 S.C. 583, 606, 623 S.E.2d 107, 120 (Ct.App.2005) (*citing deBondt v. Carlton Motorcars, Inc.*, 342 S.C. 254, 269, 536 S.E.2d 399, 407 (Ct.App.2000)). To recover in an action under the UTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s). S.C.Code Ann. §§ 39–5–10 to –560.

## A. Damages

Craft's contentions that the damages the jury awarded Wright were not proper under the UTPA and that Wright did not sustain any damages fail on the merits.

■■■ "An action for damages may be brought under [UTPA] for 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.'" *Camp v. Springs Mortg. Corp.*, 310 S.C. 514, 517, 426 S.E.2d 304, 306 (1993). Section 39–5–140(a) creates a private right of action in favor of "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39–5–20...." Under section 39–5–140, a plaintiff can recover treble damages where "the use or employment of the unfair or deceptive ... act or practice was a willful or knowing violation of § 39–5–20." *Noack Enters., Inc. v. Country Cor-*

ner *Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 477, 351 S.E.2d 347, 348–49 (Ct.App.1986).

Craft relies on *Barton v. Superior Motors, Inc.* in support of his position that Wright's damages were not proper under the UTPA. 309 S.C. 491, 494, 424 S.E.2d 524, 526 (Ct.App. 1992) ("The measure of damages for the sale of a defective vehicle is the difference in fair market value between the car, having been wrecked, and the value of the car had it not been wrecked at time of sale.") (citations omitted). In *Barton*, the plaintiff sought to recover damages under the Dealers Act, section 56–15–40(1) of the South Carolina Code (Rev.1991). *Barton*, 309 S.C. at 494, 424 S.E.2d at 526. In the case *sub judice*, although the jury found for Wright under the Dealers Act and the UTPA, the trial court required Wright to elect his remedy and he elected the UTPA. That ruling has not been appealed and Wright can only recover on the UTPA claim. Accordingly, *Barton* is not applicable and we address whether damages were proper under the UTPA.

 The UTPA allows for the recovery of actual damages. *See Global Prot. Corp. v. Halbersberg*, 332 S.C. 149, 159, 503 S.E.2d 483, 488 (Ct.App.1998) (*citing* S.C.Code Ann. § 39–5–140(a) (1976)). "Actual damages under the UTPA include special or consequential damages that are a natural and proximate result of deceptive conduct." *Id.* (*citing Taylor v. Medenica*, 324 S.C. 200, 479 S.E.2d 35 (1996)). The jury awarded actual damages that equaled the actual damages Wright claimed. Wright provided evidence the Truck was valueless in its wrecked and repaired condition. Additionally, he had paid nearly one half of the outstanding balance on his car loan, and he lost the equity on the vehicle he traded in for the Truck. The damages Wright sustained arose out of Craft's selling the Truck without disclosing it had been wrecked and repaired. Material evidence existed that could reasonably establish a finding of damages in the minds of the jurors.

## B. Deceptive Act

Craft maintains Wright failed to demonstrate an unfair or deceptive act because Craft did not have a duty to disclose the Truck had been wrecked. We disagree.

## 1. Duty to Disclose

 Whether Craft had a duty to inform Wright that the truck had been wrecked and repaired was a question of law for the trial court to address. "The Court must determine, as a matter of law, whether the law recognizes a particular duty." *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.,* 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003); *Steinke v. S.C. Dep't of Labor, Licensing and Regulation,* 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999); *Cowburn v. Leventis,* 366 S.C. 20, 46, 619 S.E.2d 437, 451 (Ct.App.2005).

The duty to disclose may be reduced to three distinct classes: (1) where it arises from a preexisting definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; (3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.

*Ellie, Inc. v. Miccichi,* 358 S.C. 78, 101, 594 S.E.2d 485, 497 (Ct.App.2004) (*citing Regions Bank v. Schmauch,* 354 S.C. 648, 673–74, 582 S.E.2d 432, 445–46 (Ct.App.2003)).

 Understanding that nothing in the UTPA suggests a deceptive act must be predicated on a violation of the duty to disclose, as Craft seems to suggest, we review the evidence to discern whether a duty to disclose was implicated in the transaction between Craft and Wright. On examination by Wright's attorney Craft admitted:

Q. Now, do you intend for your customers to rely on what you tell them about the vehicle they are purchasing?

A. Yes.

Q. Do you expect customers to rely on the statements you make about a vehicle?

A. Yeah. The year and make of the car is very vital. I have to give them the correct year so they know how to make their own investigation of the car.

Q. You expect your customers to fully believe what you tell them about the vehicles you sell them, is that right?

A. Yes.

. . .

Q. And it is reasonable for customers to rely on what you tell them, isn't it?

A. Yes.

Craft acknowledged in his testimony that he intended for his customers to repose trust and confidence in his representations concerning the vehicles he sold them. Furthermore, before purchasing the Truck Wright repeatedly questioned Craft and his employees about the Truck's condition, the warranty, and the Truck's observable defects, indicating he relied on the trustworthiness of Craft's representations concerning the Truck. With reference to the particular transaction in question, we conclude from the circumstances of the case and the nature of their dealings a duty to disclose existed because of the trust and confidence Wright reposed in Craft's representations. *See Ellie, Inc.,* 358 S.C. at 101, 594 S.E.2d at 497.

2. Tendency to Deceive

 Our case law instructs that a deceptive act is any act which has a tendency to deceive. *deBondt v. Carlton Motorcars, Inc.,* 342 S.C. 254, 269, 536 S.E.2d 399, 407 (Ct. App.2000). "Even a truthful statement may be deceptive if it has a capacity or tendency to deceive." *Wogan v. Kunze,* 366 S.C. 583, 606, 623 S.E.2d 107, 120 (Ct.App.2005) (citations omitted). Whether an act or practice is unfair or deceptive within the meaning of the UTPA depends on the surrounding facts and the impact of the transaction on the marketplace. *deBondt,* 342 S.C. at 269, 536 S.E.2d at 407. "An act is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive." *Bessinger v. BI–LO, Inc.,* 366 S.C. 426, 432, 622 S.E.2d 564, 567 (Ct.App.2005) *(cert.pending )* (citing *Gentry v. Yonce,* 337 S.C. 1, 12, 522 S.E.2d 137, 143 (1999)).

 South Carolina precedent establishes that failure to accurately represent the history of a car constitutes a decep-

tive trade practice under section 39–5–20. Our Supreme Court ruled the purchaser of a car had a cause of action under the UTPA because the dealer represented that the car was a "new demonstrator" and had "all the bugs worked out," when it had, in fact, been sold and returned by the previous owner. *Inman v. Ken Hyatt Chrysler Plymouth, Inc.*, 294 S.C. 240, 242, 363 S.E.2d 691, 692 (1988). Accordingly, in *Dowd v. Imperial Chrysler–Plymouth, Inc.*, this court held a salesman's representation that a car had been leased as part of a fleet, when the car, in fact, had been maintained by the dealer for daily rentals, constituted a "deceptive trade practice" under the UTPA. 298 S.C. 439, 442–43, 381 S.E.2d 212, 214 (Ct.App.1989). Applying this reasoning to facts similar to those in the instant case, the Supreme Court upheld a UTPA claim for failure to disclose that a vehicle had been previously wrecked. In *Ward v. Dick Dyer and Assocs., Inc.*, plaintiffs initiated an action against a dealer whose employee failed to inform them the vehicle they purchased had been wrecked and repaired. 304 S.C. 152, 158, 403 S.E.2d 310, 313 (1991). Subsequently, the dealer offered to replace or purchase the vehicle, and the dealer raised that offer as a defense against the plaintiffs' cause of action. *Id.* The Supreme Court declared the offer to replace or purchase an automobile was no defense to a claim under the UTPA that the dealer failed to disclose the vehicle had been involved previously in an accident. *Id.*

At trial in this case, Craft responded to questions from Wright's attorney concerning the information he provided to his customers. The following colloquy illustrates that Craft's business practices involve statements that have the capacity or tendency to deceive:

Q. Now, you know that when you're dealing with—you know you have to be fair with your customers?

A. That's right.

Q. And you have to be honest with your customers?

A. That's correct.

Q. And you have to thorough—you have to explain things thoroughly to your customers?

A. I will explain what is asked. If the customer asks a question, I will explain something about the car or the equipment on it.

. . .

Q. Did you provide the information that was on the title that came from State Farm to Mr. Wright?

A. I conveyed information that I received off of the car and the title such as serial number, make, model, year, a description of the vehicle.

Q. Did you tell him that State Farm had owned this vehicle?

A. He didn't ask. You know, that was not asked.

Q. So the answer is no?

A. I would have if he had asked. I would have showed him the title if he had asked.

Q. So the answer is no, you didn't tell him?

A. No, I did not.

. . .

Q. Do you understand that if you tell somebody a vehicle was wrecked, they know it was wrecked? You made that clear to them?

A. Yes.

Q. Do you understand that by not telling them it was wrecked that you are representing to them that it hasn't been wrecked?

(Objection by Craft's attorney on record)

Q. Do you understand that by not telling somebody that a vehicle had been wrecked, you are letting them believe that it had not been wrecked?

. . .

Q. Do you understand that?

A. Yes.

Craft had a duty to disclose that the Truck had been previously wrecked, damaged, and extensively repaired. The failure to disclose supported the jury's finding that Craft's conduct was unfair or deceptive. Moreover, the information Craft did share with Wright was misleading. Instead of

informing Wright about the extent of the Truck's damage and repairs, Craft claimed the damage Wright had observed was the result of a shopping cart or car door hitting the Truck in a parking lot. Furthermore, Craft withheld information he had about the extent of the factory warranty on the Truck. Craft averred he told Wright the Truck would be under whatever factory warranty was applicable. In actuality, Craft knew some of the parts that had been replaced, including the re-painted parts of the Truck, were not covered by factory warranty. Wright claimed Craft told him the Truck would be covered by the full factory warranty. Finally, when Wright asked why the previous owner no longer wanted the Truck, Craft responded that the former owner "just wanted a different truck." Craft never showed Wright the title to the Truck, from which Wright could have learned that State Farm Insurance Company formerly owned the vehicle. The evidentiary record reveals ample support for the jury's conclusion that Craft's conduct, having the tendency and capacity to deceive, was unfair and deceptive under the UTPA.

## C. Public Interest

Craft's assertion that his conduct in this matter does not impact public interest and, therefore, does not support a claim under the UTPA is without merit.

[43] To be actionable under the UTPA, an unfair or deceptive act or practice must have an impact upon the public interest. S.C.Code Ann. § 39–1–10(b) (Trade as used in this article "shall include any trade or commerce *directly or indirectly affecting the people of this State.*") (emphasis added); *see Haley Nursery Co. v. Forrest,* 298 S.C. 520, 524, 381 S.E.2d 906, 908 (1989). "Since 1986, South Carolina courts have required that a plaintiff bringing a private cause of action under UTPA allege and prove the defendant's actions adversely affected the public interest." *Daisy Outdoor Adver. Co. v. Abbott,* 322 S.C. 489, 493, 473 S.E.2d 47, 49 (1996). "An impact on the public interest may be shown if the acts or practices have the potential for repetition." *Singleton v. Stokes Motors, Inc.,* 358 S.C. 369, 379, 595 S.E.2d 461, 466 (2004) (*citing Crary v. Djebelli,* 329 S.C. 385, 387, 496 S.E.2d 21, 23 (1998)); *Wogan v. Kunze,* 366 S.C. 583, 606, 623 S.E.2d 107, 120 (Ct.App.2005); *Noack Enters., Inc. v. Country Corner*

*Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 480, 351 S.E.2d 347, 350–51 (Ct.App.1986).

The potential for repetition may be demonstrated in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts. *Singleton,* 358 S.C. at 379, 595 S.E.2d at 466; *Daisy,* 322 S.C. at 496, 473 S.E.2d at 51 (*citing Haley,* 298 S.C. at 524, 381 S.E.2d at 908; *Dowd v. Imperial Chrysler-Plymouth, Inc.,* 298 S.C. 439, 442, 381 S.E.2d 212, 214 (Ct. App.1989); *Barnes v. Jones Chevrolet Co.,* 292 S.C. 607, 613, 358 S.E.2d 156, 159–60 (Ct.App.1987)). These two ways are not the only means for showing the potential for repetition or public impact, and each case must be evaluated on its own merits to determine what a plaintiff must show to satisfy the potential for repetition/public impact prong of the UTPA. *Daisy,* 322 S.C. at 497, 473 S.E.2d at 51. Nevertheless, a plaintiff proves an adverse effect on public interests if he proves facts that demonstrate the potential for repetition. *Id.* at 493, 473 S.E.2d at 49; *see also Crary,* 329 S.C. at 388, 496 S.E.2d at 23 ("The plaintiff need not allege or prove anything further in relation to the public interest requirement.").

Craft's testimony on direct examination by Wright's attorney reveals the potential for repetition of the same deceptive act Wright encountered in his dealings with Craft:

Q. Now, Mr. Spoon was your employee, wasn't he?

A. No.

Q. But you knew him through the car business?

A. Yes.

Q. For eight or nine years?

A. I would say I have known him pretty close to that.

Q. And in the past, Mr. Spoon has told you that he has found vehicles that were damaged but that you might want to buy and have repaired so you can sell them on your lot?

A. That wasn't a frequent thing. I didn't buy a lot of vehicles like that.

Q. But that has happened in the past, hasn't it?

A. He has called me, yes.

Q. And he has told you about previously wrecked cars that he could fix and you could sell on your lot?

A. Yes.

Q. And Mr. Spoon would buy these vehicles and fix them and then you would sell them?

A. Right.

Q. And when you sold them, you knew he had previously fixed these vehicles after they had been previously wrecked?

A. Yes.

Q. You didn't tell your customers, did you, when these cars were bought by them?

A. I usually if it was brought up would tell them—I usually would tell them if the car had previous paint work or body work.

Q. But if they didn't bring it up, you didn't mention it. Right?

A. Well, for one thing, I don't buy cars . . .

(Objection on record from Craft's attorney)

Q. If other customers would buy a previously owned vehicle and didn't ask if the vehicle had been wrecked, you didn't disclose that, did you?

A. A lot of times I did.

Q. But there were other times you didn't?

A. I don't know which time you're asking me about. Normally I would tell them if it had previous paint work and I knew about it.

Craft confirmed he often buys cars with damage from insurance auctions and repairs them to sell on his car lot. He generally knows when those vehicles have been wrecked or damaged but does not always disclose that fact to his customers. Craft denied that he did anything wrong in his sale to Wright and admitted that he has not changed the way he does business as a result of this litigation. The record is replete with evidence indicating Craft has previously engaged in and

would continue to engage in the same business practices and procedures that affected his transactions with Wright.

Accordingly, evidence existed that would lead reasonable jurors to conclude: (1) Wright sustained the damages he alleged, and those damages were proper under the UTPA; (2) Craft engaged in a deceptive and unfair trade practice; and (3) Craft's deceptive and unfair practice affected the public interest. Consequently, the trial court did not err in denying Craft's motion for a directed verdict on Wright's UTPA cause of action.

## II. Denial of JNOV

Craft complains the trial court erred in denying his motion for a JNOV. We disagree.

When ruling on a JNOV motion, the trial court is required to view the evidence and the inferences that reasonably can be drawn from it in the light most favorable to the nonmoving party. *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). This court must follow the same standard. *Welch v. Epstein*, 342 S.C. 279, 300, 536 S.E.2d 408, 418 (Ct.App.2000). This court will only reverse the trial court when no evidence supports its ruling. *Steinke v. S.C. Dep't of Labor, Licensing, & Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999) (*citing Creech v. S.C. Wildlife & Marine Res. Dep't*, 328 S.C. 24, 491 S.E.2d 571 (1997)); *S.C. Prop. & Cas. Guar. Ass'n v. Yensen*, 345 S.C. 512, 521, 548 S.E.2d 880, 885 (Ct.App.2001) ("The appellate court will reverse the trial court only when there is no evidence to support the ruling below.").

For the same reasons we affirmed the trial court's denial of Craft's motion for directed verdict, we conclude evidence existed to support the court's ruling on the JNOV motion.

## III. Denial of Motion to Strike Damages

Craft contends the trial court erred in denying his motion to strike damages from the UTPA cause of action. We disagree.

A motion to strike is within the trial court's discretion, and an appellate court will not reverse absent an abuse of that discretion. *Mayes v. Paxton*, 313 S.C. 109, 115, 437 S.E.2d 66, 70 (1993). Craft's argument basically reiterated

the same grounds asserted in his motion for a directed verdict. Apodictically, Craft's motion to strike damages was essentially a motion for a directed verdict. *See Allison v. Charter Rivers Hosp., Inc.,* 334 S.C. 611, 615, 514 S.E.2d 601, 604 (Ct.App. 1999). This court may only reverse the denial of a motion for directed verdict when there is no evidence to support the ruling below. *Id.* at 616, 514 S.E.2d at 604.

Craft moved to strike damages maintaining that the $33.18 hood repair constituted the only damages Wright sustained, and those damages were *de minimis.* The trial court issued a form order denying Craft's motion to strike. Wright presented evidence of damages totaling $25,578.15. Evidence existed to support the trial court's ruling on Craft's motion.

### IV. Admission of Evidence

██ ██ Craft argues the trial court erred in refusing to admit the Truck and Wright's loan application into evidence. We disagree.

██ The admissibility of evidence is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion or the commission of legal error prejudicing the defendant. *State v. Mansfield,* 343 S.C. 66, 77, 538 S.E.2d 257, 263 (Ct.App.2000) (*citing State v. Patterson,* 337 S.C. 215, 228, 522 S.E.2d 845, 851 (Ct.App.1999)). The trial court has wide discretion in determining the relevancy of evidence, and its decision to admit or reject evidence will not be reversed on appeal absent an abuse of that discretion. *Moore v. Moore,* 360 S.C. 241, 257–58, 599 S.E.2d 467, 476 (Ct.App.2004) (*citing Hoeffner v. The Citadel,* 311 S.C. 361, 365, 429 S.E.2d 190, 192 (1993); *Davis v. Traylor,* 340 S.C. 150, 155, 530 S.E.2d 385, 387 (Ct.App.2000); *Hawkins v. Pathology Assocs. of Greenville, P.A.,* 330 S.C. 92, 108, 498 S.E.2d 395, 404 (Ct.App.1998)). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE; *see Haselden v. Davis,* 341 S.C. 486, 497 n. 12, 534 S.E.2d 295, 301 n. 12 (Ct.App.2000); *Hunter v. Staples,* 335 S.C. 93, 101–02, 515 S.E.2d 261, 266

(Ct.App.1999). "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support." *Menne v. Keowee Key Prop. Owners' Ass'n, Inc.,* 368 S.C. 557, 568, 629 S.E.2d 690, 696 (Ct.App.2006) *(cert.pending )*. "To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof." *Fields v. Reg'l Med. Ctr. Orangeburg,* 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005); *see Am. Fed. Bank, FSB v. No. One Main Joint Venture,* 321 S.C. 169, 174, 467 S.E.2d 439, 442 (1996); *Timmons v. S.C. Tricentennial Comm'n.,* 254 S.C. 378, 405, 175 S.E.2d 805, 819 (1970); *Powers v. Temple,* 250 S.C. 149, 162, 156 S.E.2d 759, 765 (1967).

The trial court admitted a number of photographs of the Truck into evidence, and the jurors were allowed to review the photographs as they deliberated. In addition, the jurors heard testimony regarding the condition of the Truck, both after the accident and at the time of trial. Admitting the actual Truck itself into evidence would have been cumulative, causing needless waste of time. The trial court did not abuse its discretion in denying admission of the Truck.

Craft's attorney attempted to enter Wright's loan application into evidence to establish that Wright represented the Truck's value between $15,000 and $16,000. The trial court ruled that the information Craft sought could be elicited by testimony without entering the loan document, thereby avoiding a potential hearsay problem. We discern no error in the trial court's ruling.

## V. Denial of Summary Judgment

Craft maintains the trial court erred in denying his motion for summary judgment. We disagree.

■ "The denial of summary judgment does not *finally* determine anything about the merits of the case.... Therefore, an order denying a motion for summary judgment is not appealable." *Ballenger v. Bowen,* 313 S.C. 476, 477–78, 443 S.E.2d 379, 380 (1994); *see also Olson v. Faculty House of Carolina, Inc.,* 354 S.C. 161, 580 S.E.2d 440 (2003) ("We

adhere to recent precedent and hold that the denial of a motion for summary judgment is not appealable, even after final judgment."); *Silverman v. Campbell,* 326 S.C. 208, 208, 486 S.E.2d 1, 2 (1997); *Raino v. Goodyear Tire & Rubber Co.,* 309 S.C. 255, 259, 422 S.E.2d 98, 100 (1992); *Holloman v. McAllister,* 289 S.C. 183, 186, 345 S.E.2d 728, 729 (1986); *Willis v. Bishop,* 276 S.C. 156, 157, 276 S.E.2d 310, 310 (1981); *Mitchell v. Mitchell,* 276 S.C. 44, 45, 275 S.E.2d 1, 1 (1981); *Neal v. Carolina Power & Light,* 274 S.C. 552, 265 S.E.2d 681 (1980); *U.S. Fid. & Guar. Co. v. City of Spartanburg,* 267 S.C. 210, 211, 227 S.E.2d 188, 189 (1976); *Medlin v. W.T. Grant, Inc.,* 262 S.C. 185, 185–86, 203 S.E.2d 426, 426 (1974); *Greenwich Sav. Bank v. Jones,* 261 S.C. 515, 516–17, 201 S.E.2d 244, 245 (1973); *Geiger v. Carolina Pool Equip. Distribs., Inc.,* 257 S.C. 112, 114, 184 S.E.2d 446, 447 (1971); *Gilmore v. Ivey,* 290 S.C. 53, 59, 348 S.E.2d 180, 184 (Ct.App.1986); *Assocs. Fin. Servs. Co. of S.C., Inc. v. Gordon Auto Sales,* 283 S.C. 53, 56, 320 S.E.2d 501, 503 (Ct.App.1984). Accordingly, we refrain from addressing the denial of Craft's summary judgment motion.

## VI. Verdict Result of Undue Passion and Prejudice by the Jury

Craft alleges the jury's verdict was the result of undue passion and prejudice. We disagree.

A trial court may grant a new trial absolute on the ground that the verdict is excessive or inadequate. *Stevens v. Allen,* 336 S.C. 439, 446, 520 S.E.2d 625, 628–629 (Ct.App. 1999). The jury's determination of damages, however, is entitled to substantial deference. *Id.; Brabham v. S. Asphalt Haulers, Inc.,* 223 S.C. 421, 430, 76 S.E.2d 301, 306 (1953). Compelling reasons must be given to justify invading the jury's province by granting a new trial to adjust damages. *See Proctor v. Dep't of Health and Envntl. Control,* 368 S.C. 279, 320, 628 S.E.2d 496, 518 (Ct.App.2006) "When considering a motion for a new trial based on the inadequacy or excessiveness of the jury's verdict, the trial court must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice, or prejudice." *Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 26, 602 S.E.2d 772, 781 (2004); *Allstate Ins. Co. v. Durham,* 314 S.C.

529, 530, 431 S.E.2d 557, 558 (1993) (footnote omitted). "A new trial absolute should be granted only if the verdict is so grossly excessive that it shocks the conscience of the court and clearly indicates the amount of the verdict was the 'result of caprice, passion, prejudice, partiality, corruption, or other improper motives.'" *Smalls v. S.C. Dep't of Educ.*, 339 S.C. 208, 215, 528 S.E.2d 682, 686 (Ct.App.2000) (citations omitted); *Vinson v. Hartley*, 324 S.C. 389, 404, 477 S.E.2d 715, 723 (Ct.App.1996) (*citing Cock–N–Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1, 9, 466 S.E.2d 727, 731 (1996)). To warrant a new trial, the verdict must be so grossly excessive as to clearly indicate the influence of an improper motive on the jury. *Welch v. Epstein*, 342 S.C. 279, 302, 536 S.E.2d 408, 420 (Ct.App.2000). The failure of the trial judge to grant a new trial absolute in this situation amounts to an abuse of discretion, and on appeal this court will grant a new trial absolute. *Stevens*, 336 S.C. at 447, 520 S.E.2d at 629 (*citing Vinson*, 324 S.C. at 404–05, 477 S.E.2d at 723); *Allstate Ins. Co.*, 314 S.C. at 531, 431 S.E.2d at 558. However, "[w]hen a verdict falls within the range of the evidence, the courts will not disturb it on the ground of excessiveness." *Satcher v. Berry*, 299 S.C. 381, 385, 385 S.E.2d 41, 43 (Ct.App.1989). "The jury's verdict will not be overturned if any evidence exists that sustains the factual findings implicit in its decision." *Smalls*, 339 S.C. at 215, 528 S.E.2d at 686.

The trial court, which heard the evidence and is more familiar with the evidentiary atmosphere at trial, possesses a better-informed view of the damages than this court. *Krepps v. Ausen*, 324 S.C. 597, 608, 479 S.E.2d 290, 295–96 (Ct.App.1996). Accordingly, the decision to grant a new trial is left to the sound discretion of the trial court and generally will not be disturbed on appeal. *Id.* An abuse of discretion occurs when the trial court's findings are wholly unsupported by the evidence or the conclusions reached are controlled by an error of law. *Id.* "In deciding whether to assess error when a new trial motion is denied, this [c]ourt must consider the testimony and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Welch*, 342 S.C. at 302–03, 536 S.E.2d at 420.

The jury awarded damages equal to the actual damages Wright claimed. The verdict is within the range of evidence

presented and that evidence sustains the factual findings implicit in the jury's decision. Accordingly, we give the proper deference to the jury in awarding damages and to the trial court in reviewing that award.

## VII. Estoppel

Craft claims Wright should be estopped from alleging damages because Wright stated in a loan application that the Truck's value was $15,000 to $16,000, while complaining in this action that the Truck has no value. We disagree.

The "[e]ssential elements of estoppel as related to the party claiming the estoppel are: (1) lack of knowledge and of means of knowledge of truth as to facts in question; (2) reliance upon conduct of the party estopped; and (3) prejudicial change in position." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 589, 553 S.E.2d 110, 114 (2001). The "[e]lements of equitable estoppel as to the party estopped are: (1) conduct by the party estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the true facts." *Id.* Evidence indicates Craft had at least as much, if not more knowledge about the true value of the Truck than Wright did. In addition, no evidence suggests the loan application executed by Wright was intended to induce Craft's reliance on the information contained in the application. Moreover, Craft did not change his position in reliance on the loan application.

Under the theory of judicial estoppel Craft claims Wright maintained two inconsistent positions—i.e. in the loan application Wright stated the Truck was worth $15,000 to $16,000 and in the current action he alleges that the Truck is worthless. "Judicial estoppel is an equitable concept that prevents a litigant from asserting a position inconsistent with, or in conflict with, one the litigant has previously asserted *in the same or related proceeding.*" *Cothran v. Brown*, 357 S.C. 210, 215, 592 S.E.2d 629, 631 (2004) (emphasis added). The purpose of the doctrine is to ensure the integrity of the judicial process, not to protect the parties from allegedly dishonest conduct by their adversary. *Id.* (citing *Hawkins v. Bruno Yacht Sales*, 353 S.C. 31, 42, 577 S.E.2d 202, 208

(2003)). Five elements are required for the application of judicial estoppel:

(1) two inconsistent positions must be taken by the same party or parties in privity with each other;

(2) the two inconsistent positions were both made pursuant to sworn statements;

(3) the positions must be taken in the *same or related* proceedings involving the same parties in privity with each other;

(4) the inconsistency must be part of an intentional effort to mislead the court; and

(5) the two positions must be totally inconsistent-that is, the truth of one position must necessarily preclude the veracity of the other position.

*Quinn v. Sharon Corp.*, 343 S.C. 411, 422, 540 S.E.2d 474, 480 (Ct.App.2000) (Anderson, J., concurring in result only) (emphasis added).

Craft urges us to take a broad view of the phrase "same or related" but does not explain how the loan application qualifies as a proceeding related to the current action. He cites *Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 489 S.E.2d 472 (1997), and *Quinn*, 343 S.C. at 414–15, 540 S.E.2d at 476, in support of this broad view. However, neither of these cases supports applying judicial estoppel in the present case. In *Hayne,* the appellant in a divorce action claimed he had no legal interest in certain property owned by his son. 327 S.C. at 252, 489 S.E.2d at 477. He later contended he owned certain property by virtue of a resulting trust. *Id.* The court applied the doctrine of judicial estoppel to bar the appellant from claiming the property. *Id.* at 252, 489 S.E.2d at 477 ("When a party has formally asserted a certain version of the facts in litigation, he cannot later change those facts when the initial version no longer suits him."). In *Quinn,* the appellant had previously filed an answer and counterclaim admitting his daughter owned and operated a corporation and stating that he had no authority to bind the corporation. 343 S.C. at 414–15, 540 S.E.2d at 476. In another case, the same appellant testified his daughter owned the corporation and denied that he owned any real estate, stocks, bonds, notes, or other valuable property. *Id.* at 415, 540 S.E.2d at 476. Appellant

then claimed, in a later action, that he was the sole owner of the corporation. *Id.* The court held appellant's later claim was barred by judicial estoppel because it directly contravened his assertions in the prior related litigations. *Id.* The *Quinn* court announced, "[w]ere we to allow [appellant] to change his position as to the facts and now claim ownership of the Corporation, 'the truth-seeking function of the judicial process [would be] undermined.'" *Quinn,* 343 S.C. at 415, 540 S.E.2d at 476.

Unlike the circumstances in *Hayne* and *Quinn,* the loan application in which Wright asserted the Truck had value was not produced in any type of formal proceeding or litigation and was not a sworn statement. Moreover, Craft, though a party to this litigation, was not a party to the loan application. Even broadly interpreting "same or related," the loan application cannot be considered the same or related to the current litigation and judicial estoppel does not apply to bar Wright's claim.

## CONCLUSION

Accordingly, for the foregoing reasons, the trial court's rulings are

**AFFIRMED.**

HUFF and BEATTY, JJ., concur.